Margaret Landers, Administratrix, et al., Respondents, *v.* The Staten Island Railroad Company, Appellant.

Jane Madden, Administratrix, et al., Respondents, *v.* The Same, Appellant.

Rosa Kelly, Administratrix, et al., Respondents, *v.* The Same, Appellant.

The provision of the judiciary article of the State Constitution, as amended in 1869 (art. 6, § 12), continuing the Superior Court of the city of New York, the Court of Common Pleas of the city and county of New York, the Superior Court of Buffalo, and the City Court of Brooklyn, with the powers and jurisdiction they then had, "and such further civil and criminal jurisdiction as may be conferred by law," does not authorize the legislature to change the character of these courts by divesting them of their locality and extending their jurisdiction to persons and matters, the subjects of actions, in other parts of the State outside of the localities wherein said courts were established. (Peckham, J., dissenting.)

When the Constitution speaks of "further civil and criminal jurisdiction," it has respect to the object of the jurisdiction—not to the territory or the persons of suitors—and by said article the courts therein mentioned were continued with the same territorial and personal jurisdiction, with power to the legislature to enlarge their jurisdiction over subjects and matters civil and criminal in their nature, and the proper subjects of civil and criminal prosecutions. The authority is to enlarge their jurisdiction as local courts, not to create new courts with general jurisdiction throughout the State. (Peckham, J., dissenting.)

When a jurisdiction is spoken of, it has not respect to the residence of the plaintiff, but the subject-matter and cause of action and the person of the defendant; the jurisdiction of these local courts is limited to causes of action arising within the territorial limits of the tribunal or to cases in which the party proceeded against resides in or is served with process within the jurisdiction. Jurisdiction cannot be conferred upon them based simply upon the fact that the plaintiff is domiciled in or casually chances to be within the locality. (Peckham, J., dissenting.)

Accordingly, *held* (Peckham, J., dissenting), that the City Court of Brooklyn had no jurisdiction of an action against a corporation for negligence as a common carrier, where the cause of action arose and the business of the corporation was transacted and its offices located outside of the limits of said city, and that the provisions of the various acts in reference to said court attempting to give such jurisdiction (chap. 470, Laws of

1870, as amended by chap. 282, Laws of 1871, and chap. 239, Laws of 1873) were unconstitutional and void.

(Argued March 6, 1873; decided September 30, 1873.)

THESE were appeals from judgments of the General Term of the City Court of Brooklyn, affirming judgments in favor of plaintiffs, entered upon verdicts.

These actions were brought to recover damages for the deaths of plaintiffs' intestates, alleged to have been occasioned by the negligence of defendant.

On the 30th July, 1871, defendant's ferry-boat, the "Westfield," which plied between New York and Staten Island, while lying at a slip in the city of New York, burst its boiler, causing the deaths of the decedents. Defendant had no office or place of business in Brooklyn. The summons and complaint were served in the city of New York.

*William A. Beach* and *Edward N. Dickerson* for the appellant. The City Court of Brooklyn is an inferior local court, and had no jurisdiction over this action or defendant's person. (Const., art. 6, § 19, Laws 1849, p. 170; *People* v. *Supervisors*, 43 N. Y., 10, 21; *Gaskin* v. *Meek*, 42 id., 378; *People* v. *O'Brien*, 38 id., 193; *People* v. *Hills*, 35 id., 449; Code, § 103.) The amended judiciary article of the Constitution continued the City Court as it was created under the act of 1849. (*Real* v. *People*, 42 N. Y., 270.) The provision of section 12 of article 6 of the Constitution must be interpreted so as to harmonize with the general policy of the Constitution. (*People* v. *Potter*, 47 N. Y., 375.) Defendant's appearance was no waiver of the objection. (*Burckle* v. *Eckhart*, 3 N. Y., 132, 137; *Wheeler* v. *Lampman*, 14 J. R., 481.)

*S. D. Morris* for the respondents. Defendant's appearance was a waiver of any objection to the jurisdiction of the court. (*Cooley* v. *Laurence*, 5 Duer, 605; *Dix* v. *Palmer*, 5 How., 233; *Webb* v. *Mott*, 6 id., 440; *Baxter* v. *Arnold*, 9 id., 445;

*Dole* v. *Manley*, 11 id., 148; *Freeman* v. *Young,* 3 Robt., 666.)

ALLEN, J.  The question first to be passed upon, upon the records before us, is as to the jurisdiction of the City Court of Brooklyn in the action.   It cannot be denied that it is one first in importance as affecting the public interests and the jurisprudence of the State, especially in view of the legislation of 1873, which, proceeding upon the theory that controlled the proceedings and judgment of the court below in these actions, assumes to confer upon four local courts concurrent and coextensive jurisdiction throughout the State, at law and in equity, with the Supreme Court, of all civil actions and special proceedings, and sends their process into every county.  (Laws of 1873, chap. 239.)   No one believes that it was the intention of the framers of article 6 of the Constitution as adopted by the people in 1869, or of the people in ratifying it, to create or suffer the creation of four or any other number of additional Supreme Courts or other courts, with the like and equal powers of the Supreme Court, having jurisdiction over the whole State.   Although, by the act of 1873, the sittings of the four courts are permanently local, that is, at the places and within the limits of the original boundaries of their jurisdiction, there is no impediment, if the act is valid, to the removal of this restriction, and these courts may traverse the State and exercise their jurisdiction in every part of it.   If that act, and the powers and jurisdiction undertaken to be conferred by it, can be maintained under the Constitution, a citizen of Cattaraugus may summon his next door neighbor to appear and answer to an action, upon a cause originating at home, in the City Court of Brooklyn or the New York Common Pleas, or the citizen of New York and Kings may be called to answer to a like alleged cause of action in Buffalo ; for these courts have power to send a summons for the commencement of an action, as well as other process, into any county of the State for service.  (Act, *supra*, § 11.)   This could not have been intended under the Constitution ; and if

that instrument can be so interpreted as to sustain the legislation based upon it, its framers will have no reason to congratulate themselves upon the precision and care with which they have sought to give expression to and clothe their intent with language. The same rule of interpretation would permit the like jurisdiction to be conferred upon every county court. The declaration of the Constitution is: "They (the existing county courts) shall also have such other original jurisdiction as shall, from time to time, be conferred upon them by the legislature." (Const., art. 6, § 15.) The same liberal, or rather latitudinarian construction of section 18 of article 6 of the Constitution, which declares that "justices of the peace and district court justices shall be elected in the different cities of this State in such manner and with such powers and for such terms respectively as shall be prescribed by law," would permit the legislature to clothe the magistrates named with general power throughout the State, including ministerial and executive as well as judicial power.

To proceed to the examination of the precise question presented by these appeals. The City Court of Brooklyn was established, as were some of the other courts referred to, as " an inferior local court of civil and criminal jurisdiction," under the authority of the Constitution of 1846. (Const., art. 6, § 14.) The struggle in the convention which framed the present substitute for article 6 of the Constitution of 1846, was to constitutionalize, that is, to make permanent and take from the legislature the power to abolish the four courts named in the amended article, to wit: The Superior Court of the city of New York, the Court of Common Pleas of the city and county of New York, the Superior Court of Buffalo, and the City Court of Brooklyn; three of these courts being well and ably represented in the convention. That was the chief design of the section, and there was no suggestion, in the debates or elsewhere in the proceedings of the convention, that the local character of the courts was to be changed, and there can be no doubt that if such had been declared or understood to be the intent and effect of the provision, it

never would have been adopted by the convention or sanctioned by the people. Upon no just principle of interpretation can it be construed so as to sustain the enlarged territorial jurisdiction sought to be conferred upon those courts. The discovery is a recent one, that any such intent and effect can be spelled out.

The Constitution, as now in force, declares that the City Court of Brooklyn and the other courts named " are continued with the powers and jurisdiction they now severally have, and such further civil and criminal jurisdiction as may be conferred by law." Whatever jurisdiction those courts possessed, whether territorially or otherwise, is by the Constitution put beyond legislative discretion; that is, the jurisdiction before statutory is now exercised under the Constitution. The jurisdiction of the City Court of Brooklyn, at the time of the adoption of this provision, was strictly local. It had a limited jurisdiction as to subjects, and restricted as to territory and the limits within which it was exercised and over persons. Its jurisdiction, as conferred by the legislature, was qualified in respect to the subjects of which it had cognizance, the persons upon and over whom it had or could acquire jurisdiction, and the territory within which it was to be exercised, and could be enlarged or curtailed, in respect to either of these, without affecting the limitations and qualifications as to the other two. The court was established in 1849, and its jurisdiction, as conferred by the judiciary article of the Constitution in 1869, was declared by the act creating it. (Laws of 1849, chap. 125.) It extended to the actions enumerated in section 103 of the Code of 1848—§ 123 of the present Code—1st. Where the cause of action arose or the subject of the action should be situated within the city of Brooklyn; 2d. To all other actions, when all the defendants resided or when personally served with the summons within the city; and, 3d. To actions against corporations created under the laws of this State and transacting their general business within said city, or established by law therein. (Act, § 2.) Criminal jurisdiction was conferred by subsequent sections of

the act. The jurisdiction, as confirmed by the amended article of the Constitution, was strictly local in all its aspects; and in the absence of any evidence in the terms of the instrument to change radically the character of the court and the extent of its jurisdiction, an intent to do so will not be inferred. Indeed, in view of the constitution of the court, and the election of its members by the local electors of Brooklyn, and the necessary immobility of the court, it would require explicit language—either a declaration in express terms or a phraseology which would admit of no other interpretation—to justify a construction which would permit the jurisdiction of the court to be extended to persons and matters the subjects of action in every part of the State, and to make it co-ordinate with the Supreme Court, heretofore, and as a matter of judicial history and policy, the only court of general original jurisdiction in the State. It is the only court recognized in the Constitution as possessing general jurisdiction in law and equity. (Const., art. 6, § 6.)

Does, then, the amended article of the Constitution, upon any reasonable interpretation, authorize the legislature to change the character of the City Court of Brooklyn by divesting it of its locality, so as to give it jurisdiction over the entire State, and to issue its original and initiatory process to every county, summoning the residents of the most remote corner from their homes to answer to actions brought in that court either by residents or non-residents of Brooklyn?

The Constitution continues that court with the powers and jurisdiction it then had, " and such further civil and criminal jurisdiction as may be conferred by law." If the latitudinarian construction which has been given to this clause is to prevail, there is no impediment or obstacle to prevent the legislature, in its discretion, from conferring upon the court jurisdiction over offences committed in any part of the State; and a party charged with petit larceny in Franklin county may, if the legislature shall so direct, be indicted and tried in the City Court of Brooklyn, or an indictment found in the Oyer and Terminer of Albany

county be, with the like legislative sanction, transferred to
and tried in that court.    The terms employed in giving
authority for the enlargement of the jurisdiction of the
court do not, *ex vi termini*, give or necessarily imply an
authority to give it jurisdiction either of subjects or causes
of action or persons outside of the boundary lines of the
city of Brooklyn, or in any respect to make it aught else than
a local court, as it was originally organized and was continued
and perpetuated by the adoption of the amended judiciary
article.    Neither would the words used in their ordinary
sense, and as used and popularly as well as legally under-
stood, have any reference to the local character of the
court or authorize the delocalization of it by the legislature.

The terms "civil" and "criminal," when used whether in
reference to jurisdiction or judicial proceedings generally, have
respect to the nature and form of the remedy, and the cause of
action or occasion for instituting legal proceedings.    Civil
stands for the opposite of criminal, and hence we have courts
known as courts of civil jurisdiction and of criminal jurisdic-
tion, distinguished by the character of the prosecutions in each.
A civil action is brought to recover some civil right, or to obtain
redress for some wrong, not being a crime or misdemeanor,
and is thus distinguished from a criminal action or prosecu-
tion.    A criminal action is a prosecution in a competent court
of justice in the name of the government for the punishment
of a crime, and a civil action is one prosecuted for the redress
of an injury or the prosecution of a wrong.    (Bouvier's Inst.,
Pl. 2642–2643, Bacon's Abr., Actions, *a*.)    A competent court
for the prosecution of either class of actions is one having
lawful jurisdiction; and civil jurisdiction simply means juris-
diction to hear and determine civil actions; and to enlarge the
civil jurisdiction of a court already having jurisdiction of that
class of actions, is merely to give jurisdiction over other
actions for the recovery of a right or the redress of a wrong,
and has no respect whatever to the territorial limit of the
jurisdiction or the jurisdiction over persons.    When the Con-
stitution speaks of further civil and criminal jurisdiction, it

has respect to the object of the jurisdiction and not to the territory or the persons of suitors. (Bouvier's Inst., Pl. 2536, 2537; and see Code, §§ 4, 5 and 6.) Civil jurisdiction is that which exists when the subject-matter is not of a criminal nature, and criminal jurisdiction is that which exists for the punishment of crime. (Bouvier's Dic., "Jurisdiction.") Therefore, "further civil jurisdiction" in the Constitution only had respect to and meant jurisdiction over subject-matters and causes of action not of a criminal nature, in addition to those of which the court already had jurisdiction. No thought was had to an extension of the territorial jurisdiction of the court, or permitting it to take cognizance of causes of action not originating or situated within the city of Brooklyn, or hauling men and women from distant parts of the State, who had never been within the limits of the city, within its power, and subjecting them to its jurisdiction. By the amended judiciary article of the Constitution the court was continued with the same territorial and personal jurisdiction; it had the same powers and jurisdiction, as to territorial limits and over persons; with power to the legislature to enlarge its jurisdiction over subjects and matters, civil and criminal in their nature, and the proper subjects of civil or criminal prosecutions. The court was created as a city court; it was continued and perpetuated by the constitutional provision as a city court; and cannot, under pretence of enlarging its civil and criminal jurisdiction and the authority given for that purpose, be converted into a State court, with plenary jurisdiction in every part of the State. When its jurisdiction and powers are thus enlarged it ceases to be a city court. The authority was to enlarge its jurisdiction as a local court, the City Court of Brooklyn, not to create a new court with general jurisdiction throughout the State.

These views are confirmed by reference to former legislation and judicial action in respect to local courts. The jurisdiction conferred upon courts local in their character had, up to the adoption of the amended judiciary article of the Constitution, always been consistent with the local character of the court, and

very far from indicating a disregard of the palpable distinction between a jurisdiction limited as to locality and general throughout the State; that is, a local and general jurisdiction; and if we assume that the framers of the present judiciary article had in view, in authorizing "further civil and criminal jurisdiction" to be conferred upon the City Court of Brooklyn and the other courts named, a jurisdiction co-extensive with that then exercised by any one of the courts under the statutes of the State, as interpreted by the courts, it will be found to give no color to the claim for an authority to confer a jurisdiction based solely upon the fact that the prosecutor chances to be domiciled in or casually to be within the city or county, irrespective of the residence of or presence of the defendants within the city, or the nature or locality of the subject-matter or cause of action or place of its origin. When a jurisdiction is spoken of, it has not respect to the residence of the plaintiff, who voluntarily submits himself and his claim to the tribunal selected by himself, but to the subject-matter or cause of action and the person of the defendant, who are subjected to the jurisdiction by force of the law creating the tribunal and declaring its powers.

The jurisdiction of the Superior Court of Buffalo, as it existed at the time of the adoption of the judiciary article, has been supposed to furnish a reason for construing the Constitution as giving the legislature authority so to extend the limits of the jurisdiction of the courts named as to permit them, at the instance of a resident within the locality within which those courts exist, by their process to subject persons and causes of action in all parts of the State to their jurisdiction. The jurisdiction of the Superior Court of Buffalo was not made to depend upon the residence of the plaintiff; but by the act of its creation (chapter 96 of the Laws of 1854, sections 9 and 10) it had jurisdiction of certain actions and proceedings "when the cause of action arose, or the subject thereof was situate in the city of Buffalo," or "when the contract was made in the city." The act did not make it necessary that the defendant should be a resident of or be served with pro-

cess within the city.     In *Bidwell* v. *Astor Mutual Ins. Co.*
(16 N. Y., 263) the question of jurisdiction, not having been
raised in the court below, was not considered in this court.
But a single question, at all relevant to the case in hand, was
decided in *International Bank* v. *Bradley* (19 N. Y., 245),
viz. : That after judgment it was to be presumed, in support
of the jurisdiction of the court, that a defendant, sued as an
indorser of a note, dated at Buffalo, though residing else-
where, and occupying no tenement as a place of business in
Buffalo, made his indorsement within the city, and this
brought the case directly within the provision of section 10
of the act before quoted.   The constitutionality of that pro-
vision, or whether that was consistent with the strict local
character and jurisdiction of the court, was not considered.
It was further held that, the court having jurisdiction of the
cause of action, it was immaterial, under the statute, whether
the defendant was served with the summons within the city.
It is not necessary to controvert or question the authority or
the correctness of this decision, or to suggest that the legisla-
ture may not give a local court jurisdiction over causes of
action originating in, or actions upon contracts made, or of
persons served with process within their jurisdiction, upon
contracts made or transitory actions originating elsewhere.

   The jurisdiction attempted to be exercised here is in
respect to a cause of action originating outside of the city,
and over a corporation not located or having a place of busi-
ness within the city.   Until this new meaning of the revised
judicial article of the Constitution was discovered, the juris-
diction of city, county and other local courts was confined to
causes of action originating within the territorial limits of
the tribunal, or to cases in which the party proceeded against
resided in or was served with process within the jurisdic-
tion ; and to call a court a local court or a jurisdiction local,
merely because the plaintiff may reside within the jurisdic-
tion of his choice, is at variance with every idea that has here-
tofore been entertained by legislators or jurists of a local
jurisdiction, or a court of limited territorial powers.   The

cause of action in all the cases now before us arose in the city and county of New York, and the corporation, defendant, is not located and has no place of business within the city of Brooklyn, and it follows that the court had no jurisdiction of the cause of action or of the defendant; and the legislature could not, under color of conferring further civil and criminal jurisdiction, have given the court jurisdiction of the actions. As my brethren, with a single exception, agree with these views and this result, it is unnecessary to consider another fatal objection to the jurisdiction of the court. Whatever jurisdiction the court had, at the time of the commencement and during the pendency of these actions, was under chapter 470 of the Laws of 1870, as amended by chapter 282 of the Laws of 1871. Under those acts the court has no jurisdiction over domestic corporations, except such as transact their general business within the said city, or are established by law therein. But as my brethren have not considered, and therefore expressed no opinion upon the construction of these statutes, the decision is placed solely upon the ground first considered. The objection to the jurisdiction was not waived by an appearance in the action and an answer therein setting up the objection. (*Burckle* v. *Eckhart*, 3 Comst., 132; Code, § 148.)

The judgment should be reversed and complaints dismissed, with costs, for want of jurisdiction in the City Court of Brooklyn.

PECKHAM, J. (dissenting). The City Court of Brooklyn, in my opinion, had jurisdiction of this case, and the act conferring that jurisdiction is constitutional.

By the constitutional amendment, adopted in 1869, it was provided that the Superior Court of the city of New York, the Court of Common Pleas of the city of New York, the Superior Court of Buffalo and the City Court of Brooklyn should be continued, " with the powers and jurisdiction they now severally have, and such further civil and criminal jurisdiction as may be conferred by law." (Art. 6, § 12.)

It is clear that the powers of this constitutional amendment did not intend to abridge or abate any of the powers then conferred, or assumed to be conferred upon those courts by the several statutes of the State. The purpose of this provision was to authorize larger and more extended jurisdiction. It is also plain that this provision intended to allow as large a jurisdiction to be exercised by the City Court of Brooklyn as was or should be exercised by either of the other named courts. There is no reason for any difference or discrimination against the Brooklyn Court. Brooklyn is a much larger city than Buffalo, and has as great need of this judicial force. No extended argument is required on this point.

What powers these courts possessed, will appear by the statutes under which they were organized. Whether the statutes conferring those powers were or were not authorized by the Constitution, as it then stood, is of no moment, as it is plain that the framers of this constitutional amendment intended to ratify all the powers assumed to be conferred by the statutes upon these courts, and authorized " such additional jurisdiction as may be conferred by law," although their constitutionality has been affirmed by this court. (*International Bank* v. *Bradley*, 19 N. Y., 245.)

By the statute organizing the Superior Court of Buffalo, that court had jurisdiction, among other things and among other cases, in an action when the cause of action arose, " or when the contract was made in that city," whether any of the parties reside therein or not. The process in such cases was authorized to be served in any part of the State, in the same manner as in the Supreme Court. This act was passed in 1854, and amended in 1857. The Recorder's Court of Buffalo was converted into a Superior Court, and those large powers conferred. Upon the City Court of Brooklyn like powers were conferred by the act of 1849 (chap. 125), and the judges of that court were to be elected. Jurisdiction was also conferred upon the latter court, among other cases, of all civil actions when either party resided in that city. In this case the plaintiff only resided therein. Assuming these

courts to be yet local, and that general, unlimited jurisdiction could not be conferred upon them by law, it would seem to be clear that there is as much of locality in this provision as to the City Court of Brooklyn, as in the act referred to as to the Superior Court of Buffalo. In that case it was not necessary that either party should reside therein. If the contract was made or the cause of action arose therein, it had jurisdiction and might send its process all over the State. This would confer a very large jurisdiction upon the Superior Court of New York. In such cases it was not necessary that either party should ever have seen the city to give it jurisdiction. Besides, the residence of the plaintiff was, at the time of the adoption of this constitutional amendment, recognized by the Code, as a proper ground for locating the place of trial in that county.

All concur with ALLEN, J., except PECKHAM, J., dissenting. Judgment reversed and complaint dismissed.