By the Court.
Allen, J.
The judgment against the defendants other than Walbridge, can not be sustained without substantially overruling Landers v. Staten Island R. R. Co. (53 N. Y., 450). The cause of action did not arise within the city of Brooklyn or the county of Kings, and there was no claim upon the trial that either of the defendants except Walbridge had *370 any time resided, or that they had been served with process within that city or county. The jurisdiction of the court was made to rest, and was sustained by the city court upon the fact that Walbridge, one of the defendants, at the time of the commencement of the action, resided in the city of Brooklyn. The trial judge submitted the case to the jury upon the theory, that when two or more are jointly liable on a contract, and one of them resided within the city, the others could be served with process at any place within the state, but if none resided within the city they were not amenable to the jurisdiction of the court, unless served with process within its jurisdiction. The verdict passed against all the defendants, and the judgment was given following the verdict, upon the sole ground that the residence of one of the defendants within the city of Brooklyn gave jurisdiction to the court over all, and that process could be served in any part of the state upon the other defendants. This is entirely inconsistent with Lander’s case. The jurisdiction of a strictly local court, as the city court of Brooklyn is, can not be extended to persons and subjects without the jurisdiction by the mere circumstance that some one or more of those jointly liable chance to reside or be within the jurisdiction. Vitality and effect can not be given to the process of the court beyond the territorial limits of the jurisdiction, merely because there are some of the joint obligors or parties liable within those limits, and subject to its process. There is no legal efficacy in the joint liability of several debtors which can give an actual or constructive jurisdiction over the persons of those without the jurisdiction, or make the court one of general jurisdiction, when these circumstances, to wit, a joint liability of several, and the residence of some within, and of others without the jurisdiction concur. It would no longer be a local court if its jurisdiction could be enlarged by such a coincidence of circum *371 stances. The court in Landers v. Staten Island R. R. Co., supra, decided that the legislature could not change the character of the city court of Brooklyn from that of a local court of limited territorial jurisdiction to one of general jurisdiction with power to summon to its bar and subject to its judicial authority those not resident or served with process within the limits of its jurisdiction as a local court. The constitution does not permit an enlargement of its jurisdiction as to persons, so as to give it power to send its process for the commencement of actions beyond the county of Kings. So far as the act of 1871 (ch. 282), which is relied upon to uphold the judgment, attempts to extend the jurisdiction to parties residing without the county of Kings by reason of the residence of other parties, or the service of process upon some of the defendants within the county of Kings, it is unauthorized by the constitution. The question was so fully considered in the Lander case that it is not deemed necessary to review or extend the discussion at this time. In case of a joint debt or obligation, if one of the joint debtors should reside or-be served with process within the jurisdiction of the court, it may well be that the action might proceed to judgment under the joint debtor act, and a recovery be had in form against all, but which should affect only the individual property of the defendant served with process and the property owned jointly by all (Oode, § 136, sub. 1).
That question is not before us. The judgment did proceed upon that ground, and was not in the form authorized by that statute. The liability sought to be established was not joint. It was either joint or several, as the plaintiff might elect to sue one or all, or as one or all might be served with process. The trustees of a manufacturing corporation are made jointly and severally liable for the debts of the company, by the omission to make the annual report required by statute *372 {Laws of 1848, ch. 40, §, 12). As the defendants were severally as well as jointly liable, it was a proper case for a several judgment against Walbridge if a case was made for a recovery against him, but the judgment must be reversed as to the others for want of jurisdiction, and the error in the charge upon that question {Oode> § 136, sub. 2; Id. § 12). It does not detract from the usefulness of the court or its character to confine it in the exercise of its jurisdiction within the constitutional limits. It is an important and efficient tribunal in the city of Brooklyn, and by its ability and despatch attracts to it much of the important and difficult litigation of that city, and the importance of the questions or the amounts litigated before it are not second to those which come before any court of the state. Its creation was the result of the necessity of a local court of a high character.
It only remains to consider the liability of Walbridge upon the merits. As the jury have found that he was a resident of the city of Brooklyn, and he did not in his answer make any question as to the jurisdiction, the judgment must be affirmed as to him, unless error was committed to his prejudice upon the trial. The action is brought for the recovery of moneys claimed to be due upon an agreement alleged to have been made with the American and European Crystallized Egg Company in August, 1870, by which the company employed Crandal and Pryer as agents to sell certain quantities of the egg prepared by the corporation, and agreed to furnish them with certain quantities during the three months beginning with October, 1870, for sale on a commission of two and a half cents per pound, and in case of a failure to deliver the egg, to pay the commission as upon a sale. The plaintiff avers a failure of the company to deliver the egg, and an assignment of the claim for the commission to him. Upon the trial it was proved that the corporation was *373 formed on August 5, 1870, for the manufacture or preparation of crystallized egg, under a patent to the defendant Lamont, and that the defendants were trustees named in the articles of association, and that no report had been made and filed by the corporation, as required by statute. It was also proved that prior to the incorporation of the company, and in April, 1870, a written agreement was made between Lamont, professing to act for himself, the defendant Andrews, and one Hiram Walbridge, afterwards the president of the company and since deceased, and Orandal and Fryer, by which Lamont agreed that Orandal and Fryer should be the sole authorized agents of any firm, association, or company then formed, and thereafter to be formed for the purpose of manufactuing and selling crystallized or dessicated egg under his patent, for the sale of such egg so manufactured and sold within the states of New York and New Jersey, to the amount of two hundred and seventy-five thousand pounds ; Crandal and Fryer to receive a commission of two and a half cents per pound ón the first one hundred thousand pounds, and one per cent, on the next one hundred and seventy-five thousand pounds sold by them. After certain stipulations as to the place and mode of transacting business, Lamont agreed that the said firm, association, or company should deliver to Crandal and Fryer thirty thousand pounds of egg during the quarter commencing July 1, thereafter, and forty thousand pounds during each of the three ensuing quarters, or pay to them the commissions as agreed upon those quantities, and Crandal and Fryer agreed to receive'and pay for the egg at the regular market rates during the periods named. Lamont and the persons whom he proposed to represent in this agreement were members and trustees of the corporation then formed, Walbridge becoming the president, Andrews the secretary, and Lamont the treasurer. No proof was given or attempted to be *374 given of any other or different contract or agreement than that made with Lamont; but it was sought to prove that the corporation had assumed the contract and taken the place of Lamont in it, and thus became liable to the other parties to it for the performance of all its stipulations. The principal witness for the plaintiff was Crandal, who testified that he had desk-room in the office of the company after its organization, and that before that time he had acted under the agreement with Lamontthat Andrews told him of the organization of the company, its trustees and officers, and ordered him and Pryer to get out cards and go to business for the company, and that he corrected the proof of the cards on which was the name of the corporation and the amount of its capital, the names of the president and secretary, and the names of Pryer and Crandal “authorized agents,” and the street and number of their office. He also spoke of having been present at a number of meetings of the officers of the company at the rooms of president Walbridge, who was in poor health, but no evidence was given of any action by the officers of the company on these occasions. The witness, under objection and exception by the defendants, testified to a conversation with Walbridge, the president, in which the latter 'stated that the company had adopted the contract to which he was a party before, and when compensation was spoken of, Mr. Walbridge said: “The company will pay you your compensation when the quarter is out; don’t be alarmed ; go about your business, and do your best.” That after that conversation, at his request Andrews addressed him and his associate a letter, dated August 23, 1870, not signed as secretary, but individually, stating as in answer to an inquiry as to the payment of their commission as agents of the corporation under agreement held by them, that by the terms of the agreement their commission, amounting to seven *375 hundred and fifty dollars, would become due on the last day of September, then nest, for the quarter preceding that date. The witness further stated, that on the first of October, himself and Pryer called on President Walbridge for the money due them, and he offered them his note, and after advising with counsel, they indicated a preference for Mr. Hulburd’s note, and Lamont went with them to the office of Hulburd, and procured his note for seven hundred fifty dollars, and gave it to them, upon which they obtained the money. They had no conversation with Hulburd upon that occasion, and Hulburd and Lamont proved the considertion of that note to have been an indebtedness from the former to the latter for stock in the corporation purchased of Lamont, and there is no evidence that Hulburd had any knowledge at the time of the transfer of the note to Orandal and Pryer, or that the note was intended for them, or that he knew of the contract between them and Lamont. The same witness testified to a negotiation in which Walbridge, Hulburd, Lamont and Andrews took part, for the sale of the products of the company in Europe by Orandal and Pryer, and that after much conversation it was proposed by Hulburd and Walbridge that Andrews should prepare a proposition, to be submitted by 0. & P. to the company, and this was afterwards done. The arrangement was consummated, but the proposition contained a clause to the effect that their contract as the company’s authorized agents for New York and Hew Jersey should be transferred for the time of their absence to some good man to be approved by the company. The same witness also proved that after the organization of the company, he and his associate Pryer had their desk and place of business at the office of the company, and were in constant communication with the manager and general business man of the corporation, Mr. Lamont the treasurer, and acting under his advice and direction, and his general and *376 repeated assurances that the contract would be performed by the company and the egg furnished as agreed, and that they omitted to abandon the arrangement and seek other employment at his urgent solicitation and assurances that the egg should be ready at an early day, and that the company would pay the commission when the quarter was out. This evidence was all legit-mate, and it can not be said that there was no evidence tending to prove the principal fact alleged and in issue, viz., the employment of the plaintiff’s assignors by the corporation upon the terms of the contract with Lamont.
The declarations and the acts of the parties, especially the acts and declarations of the officers and managers of the corporation after its formation, and upon the faith of which Crandal and Pryer acted, were competent to prove that the company had adopted the contract of Lament and consented to employ those parties upon the terms therein specified.
• The judge at the trial fairly submitted the questions of fact to the jury, and the verdict is final in this court, there being competent evidence in support of it. The employment of the agents was not required to be in writing or by formal resolution. Neither the corporate seal, nor a formal resolution of the managers is necessary to the making of a valid contract by a corporation, and the defendant’s counsel were not entitled to the instructions asked in that respect.
The declarations of Walbridge, the president of the company, in a matter affecting the business of the corporation, and in respect to which he was acting for it, would have been admissible as evidence against the company to establish its liability, and were, therefore,, competent against the defendants to prove the obligation and indebtedness of the company.
The judgment against Walbridge must be affirmed, with costs, and the judgment as to the other defendants *377 must be reversed, and a new trial granted, costs to abide the event.
All concurred, except Mllleb, J., who took no part.