Heath v. Hubbell.

EUGENE A. HEATH *against* JOHN E. HUBBELL.

(Decided December 6th, 1875.)

Where an action in the Superior Court of the city of New York, was, under the provisions of the statute (L. 1872, c. 629, § 3, subdiv. 12), in relation to the transfer of causes to the Marine Court, sent to the Marine Court by an order made on a motion which the defendant did not appear to oppose, and where the defendant appeared in the Marine Court and went to trial without objection, and on appeal from the judgment against him for the first time raised the ·objection that the statute was unconstitutional, and that the Superior Court had no power to make the order transferring the cause: *Held*, that the objection .came too late, and that the defendant having failed to object to the making of the order of transfer, or to the jurisdiction of the Marine Court, on the trial, that he had waived his right to have the case remain in the Superior Court, and that the Marine Court had jurisdiction.

In an action of slander for calling the plaintiff a perjurer and a thief, where no special damage was shown, and where the defendant uttered the slanderous words in his own office, in the presence only of his own business partner and clerks: *Held*, that a verdict of $7,000, was excessive, and it was set aside accordingly.

APPEAL by defendant from a judgment of general term of Marine Court of the city of New York, affirming a judgment ·of that court entered on the verdict of a jury. The facts are fully stated in the opinion.

*John E. Parsons*, for appellant.

*I. T. Williams*, for respondent.

JOSEPH F. DALY, J.—This action, brought to recover damages laid at $20,000, for slander, was originally commenced in the Superior Court of the city of New York, and issue joined therein. Plaintiff made a motion in that court on March 2, 1874, for an order sending the cause to the Marine Court for trial. Defendant did not appear to oppose the motion, and upon proof of due service of notice of the motion upon him, an ·order was made on that day that the action " being for slander, be, and the same hereby is, transferred to the Marine Court for

trial, as provided by the statute." The action was brought on for trial in the Marine Court, on May 8, 1874, the plaintiff appearing by his attorney and his counsel, and the defendant appearing in person and by his attorney and counsel. No objection was made by defendant to the jurisdiction of the court, nor to proceeding with the trial on any ground. Trial of the issues was had, witnesses were called on both sides, plaintiff and defendant testified in their own behalf, the cause was summed up by both sides, and given to the jury, after the charge, who returned a verdict for plaintiff for $7,000. No motion was made for a new trial. At no stage of the proceedings, either before or after verdict, was the jurisdiction of the court questioned, nor its authority to proceed with the trial under the order transferring the action from the Superior Court. The judgment was affirmed at general term of the Marine Court, and from that affirmance the appeal is now taken.

The first question presented is that of jurisdiction.

The transfer of the cause from the Superior Court to the Marine Court was ordered pursuant to the Marine Court Act of 1872 (L. 1872, ch. 629, § 3, sub. 12), which reads as follows: "Any other court of record in the city and county of New York shall have power, by an order to be entered by its direction on its minutes, to send any action of libel, slander, assault, battery, criminal conversation, seduction, malicious prosecution, or false imprisonment, pending, or that may hereafter be brought in said courts of record, after issue has been joined therein, to the said Marine Court for trial, and a certified copy of such order shall be delivered to and filed with the clerk of the said Marine Court, and entered by him in its minutes, and thereupon the said Marine Court of the city of New York shall have immediate and exclusive jurisdiction of such action, and the said jurisdiction of the said court, as to the amount of the recovery in such action, costs and additional allowances therein, shall, for the purposes of said action, be the same, and as full and comprehensive as that of the court from whence the same proceeds."

In the case of *Hart* v. *Hatch* (6 N. Y. Supm. Ct. Rep. 186), the general term of the Supreme Court of this district, upon an appeal from an order of that court removing a cause in that

court to the Marine Court under this statute, against the wish and objection of the defendant in such cause, decided that the court had no power to make such transfer, and reversed the or-- der.

In the case of *Alexander* v. *Bennett*, the Court of Appeals (60 N. Y. 204), upon an appeal from an order of the Supreme Court removing a cause from that court, under the act of 1874 (ch. 545, § 4), an act containing a general provision for transfer of cases from courts of record to the Marine Court for trial, where the defendant had also objected to the order of removal, decided that the court had no power to make such order.

The decision, in both of these cases, was put upon the express ground that one of the parties to the cause removed had objected to and opposed the order of removal, and that the Supreme Court had no power to divest itself of jurisdiction and refuse to try the cause and send it for trial to another court, against the wish of the litigants, or any of them. The Court of Appeals declares the exercise of its own jurisdiction by the court in which the action is pending, is the constitutional right of the parties, and intended for their benefit, and it is the duty of the court to exercise it and adjudicate the controversy. But the court further declares that "if the statute had required the consent of the parties to the action, as well as the court, to the transfer of jurisdiction over it to another court, a different question would be presented." And the Supreme Court, in the case cited, declares that "if both parties had consented, an entirely different case would be presented, for even a constitutional right may be surrendered by consent."

It would seem, from these decisions, that the legislature has the power to make such a provision for the transfer of causes, if it be made dependent upon the consent of the parties to the litigation ; and if the statutes authorizing the removal may be read as containing a proviso that the order transferring the cause shall be made with the consent of the parties, they would not be unconstitutional. I am of opinion, under the decisions, that the statutes should be so read and construed.

In the case of *Embury* v. *Connor* (3 N. Y. 511), the constitutionality of a legislative provision (L. 1813, ch. 179), concern-

ing the taking of private property for public use, was in question. The statute provided that where a part only of a lot was required for the public use, leaving the residue of the same lot belonging to the same owners to whom the portion required belonged, and the commissioners of estimate and assessment thought proper to include such residue in their estimate and assessment, the whole lot should, on confirmation of their report, become vested in the corporation. This provision, as it stood literally, was declared unconstitutional in the *Matter of Albany Street* (11 Wend. 148), and *Taylor* v. *Porter* (4 Hill, 147), because it authorized the taking of private property not intended nor required for the public use; but it was said that if the provision were merely intended to give the corporation capacity to take, *with the consent of the owner*, it would be unobjectionable. In *Embury* v. *Connor*, the direct question was involved whether the statute might be so read as to contain a proviso that the owner consent, and the court decided that it might, and that the statute should be let in to operate as if it contained such a provision. In that case the consent of the owners to the taking of such residue of their lot was found, not upon any written instrument under their hands, but upon recitals in the commissioner's report, upon affidavits filed with the report, showing that the owners had appeared before the commissioners and urged the taking by the corporation of the whole lot, and finally that they had accepted the award made for it.

As it is the duty of the court to construe all legislative enactments so as to give effect to them, and not conclude them to be unconstitutional because a literal reading would indicate that they violated some principle of the organic law, the better opinion would be that this provision of the Marine Court Act authorizing the transfer of causes from other courts, should be read as containing a provision that such transfer should be made upon, or with the consent of the parties to the action, and not otherwise. It is no arbitrary exercise of power to construe the act as including a provision making its operation depend upon the consent of the parties interested, since without their consent it is wholly inoperative and harmless, and they may surrender any constitutional right by consent.

The defendant, in the present case, unquestionably consent-
ed to the removal of the cause from the Superior Court to the
Marine Court for trial.  He received due notice of motion for
the order of removal, and failed to appear and object.  His de-
fault certainly indicated his acquiescence in the proposed trans-
fer.  A judgment by default has been said to be a judgment
*pro confesso*, or by consent (*Gates* v. *Preston*, 41 N. Y. 113).
No appeal lies from a judgment by default (*Briggs* v. *Briggs*,
23 N. Y. 162; *Maltby* v. *Greene*, 1 Keyes, 548), and an order
taken by default may be deemed equally conclusive, as having
been obtained upon consent.  But if it were not so, the appear-
ance of defendant in the Marine Court, without objection, and
trying the cause, are conclusive as to consent to the transfer of
jurisdiction and to the change of forum.  It is not a case where
the mere going to trial when the court has no jurisdiction
should not and cannot affect his right to question the jurisdic-
tion at any subsequent stage of the proceedings.  His consent
did not give the Marine Court jurisdiction to try the cause; that
jurisdiction was conferred by the statute, and his consent merely
let the statute in to operate.  Consent was essential to the order
of the Superior Court divesting itself of jurisdiction; but the
right of the Marine Court to try the cause was conferred by
the same power whence all its authority and jurisdiction are
derived.  It follows, from this, that there was no constitu-
tional objection to that court trying a cause so transferred to
it, where the damages exceeded the sum of $1,000, nor in giv-
ing judgment for a sum in excess of that amount.  The act of
1872, § 1, and § 3, sub. 12 (above cited), taken together, show
the intention of the legislature to confer, as to amount of recov-
ery, a jurisdiction in transferred causes, greatly exceeding the
jurisdiction of the Marine Court in cases originally commenced
there.  It was not the conferring of an extra-territorial jurisdic-
tion, nor an increase of powers conflicting in any way with the
constitutional scheme of judicial jurisdiction (*Landers* v. *Stat.
I. R. R. Co.* 53 N. Y. 450).  The legislature has repeatedly and
gradually enlarged the amount for which actions may be brought
and recoveries had in the Marine Court, and this was a step in
the same direction.

To conclude, it seems clear that these provisions of law for the transfer of causes from other courts of record to the Marine Court were intended for the benefit of litigants, to secure them a speedy trial, and if they consent to the transfer, are wholly unobjectionable.

As to the merits of the appeal. The appeal comes before us on a case and exceptions, and was argued on the case and exceptions without objection. The gravest question, as it seems to me, is that of damages, and I cannot but conclude that the amount allowed by the jury was excessive. The plaintiff Heath had been a partner of Ingersoll, the person convicted of a crime in connection with the well known "Ring" frauds, by which the city suffered the loss of many millions of dollars. Ingersoll had sued the plaintiff for a dissolution of their copartnership; this defendant was a witness upon the trial of that cause, and was contradicted by plaintiff, who was a witness on his own behalf. In reference to this suit, defendant said to one of his clerks, Francis Burdett, in the course of a conversation, "I know Heath to be a liar and a perjurer, and he perjured himself on the last civil suit;" and on another occasion he said to William C. Taylor, another of his clerks, "If any man perjured himself, Mr. Heath had." On other occasions, commenting on the conviction of the same Ingersoll and one Farrington, for a crime connected with the above mentioned "Ring" frauds, defendant said, in a conversation with his said clerk Burdett, "It is a shame those parties should be in Sing Sing when another equally guilty should be left to go free." And on another occasion said to his partner, one Jones, "Heath is a thief, and I can prove it by a whole regiment of men;" and on another occasion said to Jones, in the presence of the clerk Taylor, "I have no doubt Heath (the plaintiff) shared the plunder robbed from the city by Ingersoll and others."

It will be observed that these statements were made by defendant to his own partner and clerks, and in his own store; not in the presence of plaintiff, nor to any one who he had any reason to believe would repeat them to plaintiff. The plaintiff recovered because the words were actionable *per se*, and there was no attempt to show special damage. The clerk Burdett

repeated the words to the plaintiff, and made a memorandum of them, and was and continued to be his friend. All the parties to the conversations evidently understood that the defendant's charge of perjury referred to Heath's contradiction of his evidence in court, and his charge of theft and robbery of the city referred to Heath's partnership with Ingersoll in a firm which had furnished goods to the city. The defendant, when he uttered the slanders, was, it may be said, in a place and among people where he had no more reason to be guarded in his speech than if he were in his own home and family. It was his partner and his servants to whom he spoke. This was not the peculiar aggravating case of a slander uttered to the face of an innocent man, or among strangers who might be influenced by the charges. The jury gave a verdict of $7,000; a sum greatly in excess of any just compensation for the injury to plaintiff's feelings, and far greater than was needed as an example or as a punishment. I have not found in the books a verdict of that magnitude for the offense. A verdict of $2,500 was set aside as excessive when given against a member of the legislature of Massachusetts for charging, in his place, that the plaintiff was a convict, and guilty of complicity, theft, and the robbery of a bank, when the plaintiff had been tried and honorably acquitted of such complicity (*Coffin* v. *Coffin*, 4 Mass. 1). A verdict of $2,500 damages, for accusing the plaintiff of stealing, was set aside as excessive (*Freeman* v. *Tinsley*, 50 Ill. 501). And so was a verdict of $600 for charging the plaintiff with larceny (*Potter* v. *Thompson*, 22 Barb. 89).

In the case before us, the jury evidently regarded the slander uttered by defendant as an attack on Heath for having testified against Ingersoll, and, unless severely punished, as calculated to deter others from testifying against great political culprits or public officers charged with crime. Whatever the consideration that weighed with the jury, they must have been under considerable excitement caused by the trial, and it is not too much to assume that it was connected with the public prosecutions of the city's plunderers had shortly before. I can see nothing in the case of such importance or peculiar aggravation as to war-

rant me in believing that the jury exercised, on the subject of damages, their deliberate judgment upon the evidence.

The judgment should be reversed, and a new trial ordered, costs to abide the event.

CHARLES P. DALY, Ch. J., and LOEW, J., concurred.

Judgment reversed, and new trial ordered.