PROCTOR and others, adm'rs, &c. *vs.* WANMAKER, public
          adm'r, &c.

Whenever the property of an intestate, of which the public administrator in the city
    of New-York is entitled to take charge, exceeds the sum of $100 in value, the latter
    must serve a personal notice upon the widow and all the relatives of the decedent,
    who are entitled to any share of his estate, if they are to be found in the city, of
    the intention to apply to the surrogate for letters of administration. And in all
    cases where the notice is not personally served it must be published for four
    weeks.

And where letters of administration are granted, by the surrogate, to the public ad-
    ministrator, without a personal service of the citation upon the widow and rela-
    tives of the decedent, or the publication of a notice in the manner directed by the
    revised statutes, such grant will be irregular; and the letters of administration may
    be revoked.

The 31st and 32d sections of the title of the revised statutes relative to public admin-
    istrators, were not intended to deprive the widow, or next of kin, of the right to
    have the grant of administration to the public administrator vacated and set aside
    for irregularity, where it has been improperly obtained without a compliance with
    the directions of the statute on that subject; although the application for that
    purpose is not made within the time limited by those sections, in respect to cases
    where all the proceedings of the public administrator have been correct and
    regular.

Independently of the statute of 1837, a surrogate has power to call in and revoke
    letters of administration, which have been irregularly and improperly obtained,
    upon a false suggestion of a matter of fact, and without due notice to the party
    rightfully entitled to administration.

THIS was an appeal by the administratrix and administrator
of Amos Proctor deceased, from an order of the surrogate, of the
city and county of New-York, denying the application of the
appellants to set aside the letters of administration granted to the
public administrator; and also revoking and setting aside the let-
ters of administration which had been granted to the appellants.
The decedent was a resident of the city of New-York, and died
there in May, 1844, leaving Elizabeth Proctor, one of the appel-
lants, his widow, and several adult children surviving him.    His
principal property consisted of a claim to a large amount, against
the United States; a part of which claim was received, soon
after his death, by virtue of letters ad colligendum issued to H.
Wilson, the then public administrator.    In August, 1844, the

then public administrator applied to the surrogate and obtained citations, to the widow and children of the decedent, to show cause, on the 24th of September thereafter, why administration upon the estate should not be granted to him. And upon an affidavit of M. B. Butler, that he served the citation personally on the widow and three of the daughters of the decedent, and upon one of the sons by delivering it to the other son for him, and upon the remaining daughter by delivering the same to her husband, the surrogate, on the return day of such citation, granted letters of administration to the then public administrator. The widow, not having in fact been served with the citation, and being ignorant of the granting of administration to the public administrator, applied to the surrogate, ex parte, in May, 1845, and obtained a grant of administration to herself, and to H. Andrew who was associated with her by her consent. And she and the said H. Andrew having given security, as required by law, for the faithful performance of the trust, a supersedeas of the letters testamentary which had previously been issued to the public administrator was subsequently granted. The successor of the public administrator having refused to deliver over the funds of the estate in his hands, the appellants presented to the surrogate a petition, stating the above matters, accompanied by the affidavits of the son-in-law, and two of the daughters of the decedent, showing that the citation of August, 1844, was not served upon the widow, but that it was delivered to one of the daughters; who, supposing it merely to relate to the granting of letters ad colligendum, to which the family had previously assented, laid it by, and never showed it to her mother.

*E. W. Chester*, for appellants. I. It does not appear, nor is it the fact, that the intestate left any goods, chattels or effects within the city and county of New-York, or in any other situation provided for in Part 2, Chap. 6, Art. 1, § 4 of the Revised Statutes, (*2d ed. p.* 55.) There was, therefore, no right, power or authority to grant administration to the public administrator. (*See Hammond* v. *McLea,* 2 *John. Ch. R.* 493; *Goodrich* v. *Pendleton.* 4 *Id.* 557, 8, 9.) In courts of limited jurisdiction

Proctor *v.* Wanmaker.

it must appear, on the face of their proceedings, that they acted within their jurisdiction.

II. The right of administration was in the widow of the intestate. (2 *R. S.* 2*d ed. p.* 17, § 27.)

III. This right was not defeated or impaired by the grant to the public administrator, without notice to the widow as required by the statute. (2 *R. S. p.* 57, § 16, 17, 18.) Personal notice is required. The letters were voidable, and it was the duty of the surrogate to repeal them. (*See Comstock's Dig. of the Law of Ex'rs and Adm'rs, p.* 263, 264; 1 *Com. Dig. Adm'r,* (*B.* 6,) (*B.* 8;) *Salk.* 38; *P. Wms,* 43; 11 *Vin. Abr.* 114; 4 *Burr. Eccl. Law,* 248, 9; 2 *Kent,* 413.)

IV. The grant of administration to the widow was, ipso facto, a repeal of the letters previously granted. (*See* 11 *Vin. Abr.* 114, *and several of the other authorities above cited.*)

V. There is nothing in § 32 of the statute, (2 *R. S. p.* 60,) to prevent the widow's applying after the three months; especially where she has not received even constructive notice of the application, by advertisement, as required in all cases where personal service is not made. That, and the preceding sections, seem rather to refer to cases where the property of the intestate is of less than $100 value; in which cases, the public administrator becomes vested with the power of an administrator, by his own act, without any formal grant by the surrogate. In such cases, the estate would probably be nearly settled in three or six months. By the act of 1837, (*Gen'l Laws, p.* 180, § 34,) the surrogate is empowered to revoke letters obtained on false pretences. This statute is, in this respect, merely cumulative. For the surrogate clearly had this power before. (11 *Vin. Abr.* 116.) Here was a false pretence in a matter of most material import; and by it, whether intentional or not, the widow's right could not be defeated.

VI. Administration having been granted to the widow, who was rightfully entitled, the surrogate had no power to revoke the same. (*See the authorities above cited.*) Most especially could he not do this on a citation to the respondent to show cause why he should not deliver up the property of the intes-

Proctor *v.* Wanmaker.

tate, &c., and without any proceedings instituted against her. She was the rightful legal administratrix. The letters to the public administrator had become null, and the surrogate could not, on his own motion, without a citation and without a hearing, revoke her letters of administration.

VII. Administration granted to a public administrator does not descend, *ex vi officii,* to his successor. The successor must apply and obtain administration de bonis non, as other persons entitled to administration, when the amount of property exceeds $100, so as to render a formal grant of administration necessary in the first instance. The delivery over to his successor in office, of all papers, money and effects in his hands, as required by the statute, (2 *R. S.* 63, § 45,) does not make such successor administrator de bonis non. The grant of administration to a public administrator is a grant to him by name, though describing him as public administrator; and it cannot confer authority on his successor.

*M. T. Reynolds,* for the respondent.

THE CHANCELLOR. The grant of administration to the public administrator in September, 1844, was clearly irregular, and should have been set aside by the surrogate. The statute is imperative, that if the property of the intestate exceeds the value of $100, the public administrator shall serve a personal notice, upon the widow and the relatives who are entitled to any share of his estate, if there be any to be found in the city of New-York, of his intention to apply to the surrogate for letters of administration. And in all cases where the notice shall not have been personally served, it shall be published for four weeks. (2 *R. S.* 121, § 16, 17.) The affidavit of Butler was therefore insufficient, upon its face, to entitle the public administrator to the grant of administration. For it there appeared that the citation was not served personally upon Oran, one of the sons of the decedent, but that it was only handed to his brother George for him. It is true, Butler now swears that he could not ascertain his residence, after diligent inquiry. But he should have

stated the fact, that he had made such inquiry, in his former affidavit; and the public administrator should have then produced evidence that he had published the notice, in a newspaper in the city of New-York, for the time prescribed by the statute.

Again : I am satisfied, from the evidence stated in the surrogate's return, that the citation which was returnable in September, 1844, was never in fact served upon the widow, and that she knew nothing of its contents until after the administration had been granted to herself and Andrew. She swears that she had no knowledge that such a citation had been issued, previous to that time. Helen M. Proctor also swears that all the citations annexed to her affidavit, were delivered to her, and that none of them were delivered to her mother ; that when the citations were thus served on her by Butler, he remarked that he supposed they ought to be served personally, but that he presumed it would make no difference. And she produces the citations thus served upon her, one of which is directed to her brother Oran, one to herself, one to her mother "Elizabeth Proctor, widow of, Amos Proctor, deceased," and one to each of her sisters, Lucy and Elizabeth. She also states that supposing they related to the letters ad colligendum which she and the family had consented should be granted to the public administrator, she did not deliver them to the persons to whom they were addressed, and for whom they were intended, but placed them among other papers belonging to the estate. And she is fully supported in this statement by the affidavits of her brother-in-law, and of one of her sisters, who were present when the citations were delivered to her. Butler therefore is undoubtedly under a mistake in supposing that this was a personal service upon the widow, or the other members of the family who were not cognizant of the contents of the papers delivered to Helen M. Proctor.

The provisions of the third subdivision of the 31st section of the title of the revised statutes relative to public administrators, (2 R. S. 124,) appear to have been intended to reach the case of a regular grant of administration, to the public administrator, in relation to property in the city of New-York, where the intestate was an inhabitant of some other county in this state at the

Proctor *v.* Wanmaker.

time of his death; so that the surrogate of such other county had the exclusive right to grant general administration on his estate, according to the provision of the first subdivision of the 23d section of the title of the revised statutes relative to granting letters testamentary and of administration. (2 *R. S.* 73.) In that case it will be perceived that, by the provisions of the title relative to public administrators, the surrogate of New-York is authorized to grant letters of administration to the public administrator where the decedent has left goods in the city of New-York, or where goods belonging to his estate have afterwards come there. But, by the provisions of this 31st section, in all such cases of regular administration granted to the public administrator, if letters testamentary had been, or shall there-after be, granted to an executor of the decedent's will, or if the surrogate of the proper county had already granted letters of administration upon the estate of the decedent, or shall grant such letters within six months thereafter, the powers of the public administrator are to be superseded. And the 32d section was intended to provide for the case where the surrogate of New-York had jurisdiction to grant letters of administration, to the widow or next of kin, but where such widow or next of kin had not appeared and opposed the granting of administration after a notice had been regularly published; because the widow and relatives did not reside in the city, or because the fact of their residence therein was not known to the public administrator, so as to require him to serve them personally with a notice. Neither of these sections, however, were intended to deprive the widow, or next of kin, of the right to have the grant of administration to the public administrator vacated and set aside, for the irregularity, where it had been improperly obtained, without complying with the directions of the statute on that subject; although the application for that purpose was not made within the time limited by those sections, in cases where all the proceedings of the public administrator had been correct and regular.

Here the application to the surrogate was made, by the widow, within six weeks after she discovered that administration had

been granted to the public administrator; and as soon as she found that he intended to contest the right of the appellants to the administration of the estate. The surrogate should therefore have granted that application; and should have revoked and annulled the letters which had been irregularly granted to the public administrator, upon the false or mistaken affidavit that the citation had been personally served upon the widow of the decedent, who was known to be living in the city of New-York. Independently of the statute of 1837, the surrogate was authorized to call in and revoke letters of administration which had been irregularly and improperly obtained, upon a false suggestion of a matter of fact, and without due notice to the party rightfully entitled to administration. (*Cornish* v. *Cornish*, 1 *Lee's Ecc. Rep.* 14; *Burgis* v. *Burgis, Idem*, 121; *Oglevie* v. *Hamilton, Idem*, 357; *Smith* v. *Cary, Idem*, 418; *Lord Trimlestown* v. *Lady Trimlestown*, 3 *Hagg. Ecc. Rep.* 243.)

As the grant of administration to the public administrator was irregularly obtained, and must be revoked, it is unnecessary to consider the question whether it is necessary to give him notice, where the widow or next of kin apply for administration within the three months after a regular grant of administration has been made to him. The decretal order of the surrogate must be reversed; and a decree must be entered setting aside and revoking the letters of administration granted to the public administrator, as irregularly and improperly obtained, without due notice to the widow and some of the next of kin. And the letters of administration granted to the appellants must be declared to be valid. The respondent must also be directed to deliver up to the appellants, as the rightful representatives of the estate of the decedent, all the moneys, books, papers and property which have come to his hands.