New York County.— HON. D. C. CALVIN, Surrogate.— July, 1877.

## DANSER v. JEREMIAH.

*In the matter of the probate and construction of the last will and testament of* MARY M. DANSER, *deceased.*

Under the provisions of Chapter 359 of the laws of 1870 (L. of 1870, p. 829, § 11), the surrogate of New York County has jurisdiction to hear and determine the validity of dispositions in a will, however those questions may arise.

This jurisdiction may be exercised in a proceeding instituted to prove the will, and upon objections filed therein, and is not necessarily confined to a proceeding begun for the special purpose of construing, and determining the validity of, the will.

The jurisdiction carries with it authority to bring into court all the parties in interest.

THE objections filed to the probate of the instrument offered as the last will and testament of the decedent, raised the customary questions as to mode of execution and publication, mental capacity of the testatrix, and undue influence; and stated particularly that the third paragraph of the alleged will attempted to create a trust not authorized by the laws of this State; that each and every of the bequests to the benevolent, charitable, and religious corporations, societies, and associations mentioned in the twentieth paragraph were not executed at least two months before the death of the decedent, as required by section 6, chapter 319, of the laws of 1848; and that the bequests to certain specified associations, societies, churches and institutions, were void, because those organizations were not corporations, the several acts attempting to create them not having been passed by a two-thirds vote of the members of each branch of the Legislature, as required by section 2, title 4, chapter 7, part 1, of the Revised Statutes (2 *R. S.*, 156;) and that the 22d paragraph of said instrument attempted to create a trust not authorized by the laws of this State.

The third paragraph objected to, provided that the decedent's executor should purchase a plot of ground in Greenwood Cemetery, in case decedent should not have purchased one in her lifetime, and cause to be erected a tomb, to contain the bodies of her father, mother, and herself, and of an aunt and her deceased child, and of her living children when dead, and of her deceased husband, if she should desire, and to expend, after payment of debts and funeral expenses, a sum necessary to erect such tomb, not to exceed $25,000.

The 22d clause objected to as above stated, is the residuary clause, whereby she gave and bequeathed all the rest and residue of her estate to her executor ("who knows my wishes in this respect,") to be by him distributed to such charitable or religious societies, associations, or corporations, or for such other benevolent purposes as he might see fit.

The counsel for the contestants finally limited his objections to the validity of the bequests embraced in the third, twentieth and twenty-second paragraphs of the will, and covered by the objections above stated, and claimed that this court had power and jurisdiction under the eleventh section of chapter 359 of the Laws of 1870 to pass upon and determine the true construction, validity and legal effect thereof, and asked the court to exercise in this proceeding such power and jurisdiction, to which several of the legatees, whose legacies were called in question, assented.

The proponent, with several of the legatees whose legacies are questioned, objected to such construction, on the ground that this court had no jurisdiction to construe the instrument in question under the eleventh section aforesaid, and claimed that this court is limited to cases in which the Supreme Court would take cognizance of such construction in an action brought there for that purpose, while the counsel for two of the contestants raised the objection that the statute of 1870, which attempts to confer the authority upon this court to construe wills, &c., is unconstitutional.

All the corporations, societies and associations which are legatees under the will in question, the validity of whose legacies is disputed, appeared upon this proceeding, with the exception of one.

W. O. BARTLETT & C. A. H. BARTLETT *for the contestant.*

A. R. DYETT *for the proponent.*

L. L. DELAFIELD *for N. Y. Eye and Ear Infirmary, &c.*

E. L. FANCHER *for various legatees.*

THE SURROGATE. —By section six, article six, of the Constitution, as amended, ratified and adopted, December 6, 1869, it is provided that " there shall be the existing Supreme Court, with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or may be prescribed by law."

By section twelve, of article fourteen, of the same Constitution, it is provided that " all local courts established in any city or village, including the Superior Court, Common Pleas, Sessions and Surrogate's Courts of the city and county of New York, shall remain until otherwise directed by the legislature, with their present powers and jurisdictions."

By section nineteen, of article six, it is provided that " inferior local courts of civil and criminal jurisdiction may be established by the legislature."

It will be observed that section six, of article six, above cited, which defines the jurisdiction of the Supreme Court, does not make *that jurisdiction exclusive,* and section twelve, of article fourteen, where it provides that the courts therein mentioned, including the Surrogate's Court of the city of New York, " shall remain until otherwise directed by the legislature, with their present powers and jurisdictions," recognizes, by necessary implication, the authority of the legislature to change that jurisdiction, either by

enlarging or diminishing it; and I should not hesitate to so hold, were there no adjudications upon the question.

In Forrest *v.* Forrest (25 *N. Y.*, 501), it is held in substance that the provisions of the Constitution of 1846, defining the powers and jurisdiction of the Supreme Court, did not make that jurisdiction *exclusive,* but that the legislature had the right to confer a concurrent jurisdiction upon the Superior Court of the city of New York, which by that Constitution was recognized and defined to be a local court.

In Landers *v.* the Staten Island R. R. Company (53 *N. Y.*, 450), it was held substantially that the legislature, under the twelfth section, of article six, of the Constitution, had the power to enlarge the jurisdiction of the City Court of the city of Brooklyn, &c., over subjects and matters civil and criminal in their nature — that is, to enlarge their jurisdiction as local courts, but not to create new courts of general jurisdiction throughout the State. In that case, the jurisdiction of the City Court of Brooklyn, over the persons of litigants not residing in that city, was sought to be maintained, and Allen, J. (at page 454), says: "The jurisdiction of the City Court of Brooklyn, at the time of the adoption of this provision, was strictly local. It had a limited jurisdiction as to subjects, and restricted as to territory, and the limits within which it was exercised, and over persons. Its jurisdiction, as conferred by statute, was qualified in respect to the subjects of which it had cognizance, the persons upon, and over whom, it had, or could acquire jurisdiction, and the territory within which it was to

be exercised, and could be enlarged or curtailed in respect to either of these, without affecting the limitations and qualifications as to the other two;" and (at page 456), the same learned judge says: "When the Constitution speaks of further civil and criminal jurisdiction, it has respect to the object of the jurisdiction, and not to the territory or the persons of suitors."

In the People *v.* Flagg (46 *N. Y.*, 401), it is held that the Constitution of the state confers upon the legislature all legal powers, and if an act is within the legitimate' exercise of that power, it is valid, unless some restriction or limitation can be found in that instrument itself.

From such an examination of the provisions of the Constitution as I have been able to make, I find no restriction upon the authority of the legislature to confer the jurisdiction and authority upon this court that is claimed for it under the act of 1870. Nor am I able to perceive any good reason why such jurisdiction should not be conferred upon any considerations of convenience or fitness, for it seems to me that the construction of the various provisions of a will which is submitted for probate to the Surrogate, is most appropriately devolved upon such Surrogate, and that its exercise would subserve the convenience of the parties litigant, and secure uniformity, and economy of time and expenditure.

By section 11, of chapter 359, of the Laws of 1870, it is provided that in any proceeding before the Surrogate of the County of New York, to prove the last will and testament of any deceased person, as a will of real and personal estate, in case the validity of any of

the dispositions contained in such will is contested on the construction, or its legal effect called in question by any of the heirs or next of kin of the deceased, or any legatee or devisee named in the will, the Surrogate shall have the same power and jurisdiction as is now vested in, and exercised by, the Supreme Court, to pass upon and determine the true construction, validity, and legal effect thereof, and the remainder of the section provides that the persons above named may appeal from his decision.

The authority of this court to pass upon and determine the true construction, validity, and legal effect of the disposition contained in the will which are called in question by the heirs and next of kin, is disputed under the authority of Chipman v. Montgomery (63 N. Y., 221), which holds in substance that an action brought by the heirs or next of kin in hostility to a will, to obtain the judicial construction of a will, but in fact brought for the purpose of overthrowing the same, and to establish the rights of the plaintiff to a share of the estate, as in case of intestacy, could not be sustained in a court of equity, but they must assert their right directly by a proper action, and Mr. Justice Allen, in delivering the opinion of the court (at page 230), says: "The rule is that to put a court of equity in motion, there must be an actual litigation in respect to the matters which are proper subjects of the jurisdiction of the court, as distinguished from a court of law; although the distinction between actions at law and suits in equity are abolished. The distinguishing features of the two classes of remedies legal and equitable, are as clearly marked and rigidly observed as

they ever were, and this is essential to the administration of justice in an orderly manner and the preservation of the substantial rights of suitors. Hence one who claims real property, must bring his action of ejectment, or other proper action for its recovery, and he who had a right to personalty, or to any debt or duty which is the subject of an action at common law must resort to the appropriate remedy by action for the special property, debt, or duty, or damages for the infringement of his right;" and the same learned Judge quotes the language of Mr. Justice Folger, in Bailey v. Briggs, (56 *N. Y.* 497,) with approbation, as follows; "It is when the court is moved in behalf of an executor, trustee, or *cestui-que-trust* to ensure a correct administration of the power conferred by a will, that jurisdiction is had to give a construction to a doubtful or disputed clause in a will. The jurisdiction is incidental to that over trusts," (citing several authorities).

It must be admitted that the statute of 1870, under consideration, is in many respects obscure in its provisions and incomplete, and the necessity of its construction is quite as urgent as that of the will in question. But while it remains on the statute book it is the obvious duty of this court to seek to enforce its provisions according to the intent of the legislature which enacted it, and this case seems to me to present a fitting opportunity to secure its authoritative construction, and while the manifold duties devolving upon the incumbent of this office forbid that he should strive, unreasonably, to extend the jurisdiction of this court, yet it would be an official dereliction for him to

refuse to exercise the jurisdiction by law conferred upon him.

The learned counsel who disputes the authority of this court to pass upon the validity, construction, and legal effect of the dispositions contained in the will in question, interpret the 11th section of the act of 1870 as though it read: "The surrogate shall have the same power and jurisdiction as is now vested in and exercised by the Supreme Court as a *court of equity,* in the same cases and acquired in the same manner," while it seems to me the use of the words "same power and jurisdiction as is now vested in and exercised by the Supreme Court," was intended to express the amplitude of the power conferred upon this court, rather than as a limitation, and to refer to the power that is or might be exercised by that court in any. case where it obtained jurisdiction, in other words, that it was the intention of the legislature in passing the act under consideration, in case a will should be presented for probate and the validity, construction or legal effect of its dispositions should be raised by either of the persons interested, named in the act, the Surrogate should take jurisdiction and exercise the authority of determining the legal effect and true construction of any of its provisions, as absolutely as the Supreme Court might do, when it obtained jurisdiction of the same parties and the same matter, whether as a court of equity or law.

It seems to me to be a fair and reasonable construction of the section in question that it was intended to confer upon the Surrogate of this County the power to pass upon the validity and legal effect of any of the

dispositions of a will propounded by him on the contest, or called in question by either an heir, next of kin, legatee, or devisee, and that its object was to avoid the absurdity of a will being admitted to probate when it was apparent that its provisions would be adjudged void, on suit brought for that purpose.

If an action should be brought for the purpose of establishing a lost or destroyed will, would there be any doubt that the court would in the same suit, have the power and authority to construe any of its provisions or pass upon their legal validity? Or suppose an action should be brought by the heirs at law for the recovery of real estate, which had been devised to a corporation, by law not entitled to take, and by way of defence a will which had never been probated should be given in evidence, on due proof of its execution according to law, as a defence, showing that the defendant was the owner by virtue of the devise, would there be any doubt that the same court could determine the question as to the authority of the devisee to take? or would the plaintiff be turned out of court and left to his affirmative action to establish the invalidity of the devise? Obviously, such a proceeding would be unjust, especially as it is held in Chipman v. Montgomery, above cited, that the Supreme Court in equity would not take cognizance of such a case at the suit of the heir-at-law, and if so, then clearly the Supreme Court would be found incapable of protecting the rights of parties, or the redress or prevention of their wrongs, and the real owner compelled to await the action of the executor who, from caprice or otherwise, might neglect to move.

In Chipman v. Montgomery, above cited, jurisdiction was refused by the Supreme Court as a court of equity, because it was alleged that there was a clear legal right which could be enforced at law and no resort was necessary to a court of equity, but the statute of 1870 under consideration does not limit the Surrogate of the County of New York to the power and jurisdiction vested in and exercised by the Supreme Court *as a court of equity,* but all the authority which that court may exercise, whatever the nature of the action may be, in the determination of the true construction, validity and effect of any of the dispositions of a will, is conferred upon the Surrogate of this County by that act.

In the matter of the probate of the alleged last will and testament of Charles Fox, deceased, the former Surrogate, Hutchins, refused probate of that will as a will of real estate, under objection filed by the heirs-at-law to the validity of the devise of the decedent therein of his real estate to the United States, the validity of such disposition having been contested and its construction and legal effect called in question, pursuant to the eleventh section of chapter 359 of the Laws of 1870.

An appeal was taken from that decision and construction to the general term, which was affirmed in 63 *Barbour,* 168, from which decision of the general term an appeal was taken to the court of appeals, and its affirmance will be found in 52 *N. Y.,* 530.

An appeal was further taken to the Supreme Court of the United States from the decision of the Court of Appeals, and the recent decision affirming the judg-

ment below has been promulgated by that court. This is the only case of which I am aware, where the question of construction, etc., under the act of 1870 has been under review, but I am not willing to believe that if there had been any doubt, either as to the constitutionality of the act in question, or of the authority of the former Surrogate to construe the Fox will, it would have escaped the attention of the learned counsel engaged in the case and the several courts through which the case passed.

It is conceded by counsel, that the Surrogate on *final accounting* may under the authority of the Revised Statutes, do all that it is claimed under the act of 1870 that he may do on probate; hence it cannot be justly urged that the act in question seeks to confer any extraordinary or dangerous powers upon the surrogate of this county; for if he be deemed competent to determine these questions in one stage of the proceedings, it would be difficult to state a sufficient reason why he should be held incapable of doing so in another.*

If it be true, as laid down in Chipman v. Montgomery, that the jurisdiction to construe the will, or any of its provisions, is incidental to that over trusts, and that such jurisdiction must be sought in behalf of an executor, trustee, or *cestui-que-trust*, it seems to me

---

* Subsequently, in Bevan v. Cooper (72 *N. Y.*, 317), it was held that the Surrogate of N. Y. County, under the act of 1870, could not exercise the jurisdiction to construe a will, upon the final accounting of executors, but that the power was restricted to a proceeding to prove the will, and that where such jurisdiction had been assumed on a final accounting, a reversal of the judgment should be decreed by the Court of Appeals, notwithstanding the party raising the question on appeal had not appealed from the Surrogate's decree.

equally clear that the executor is a trustee for the various legatees. Perry on Trusts (§ 94) states the rule to be in all the United States, that an executor is to be held a trustee for the *heirs and next-of-kin of the decedent.* In the case under consideration, suppose any of the bequests called in question should be held to be void, or should lapse, they should fall into the *residuum,* and the executor would be a trustee of the residuary fund. If, as it is claimed, the residuary clause is void for uncertainty, then clearly he would become a trustee for the heirs and next-of-kin, and but for the decision in Chipman *v.* Montgomery, which holds that neither the heir or next-of-kin can invoke the jurisdiction of the Supreme Court for the construction of a will, I should entertain no doubt that *cestuis-que-trust,* in the event suggested, could under the authority of Bailey *v.* Briggs, 56 N. Y., 407, and approved of in Chipman *v.* Montgomery, move the court to exercise its authority and jurisdiction in the construction of the will in question, as both the heirs-at-law and next-of-kin, as well as several of the legatees, call in question certain provisions of the will, and ask the court to pass upon their construction and validity.

Upon reflection, I am inclined to concur with the learned counsel who appears for the Eye and Ear Infirmary and the Society for the Prevention of Cruelty to Children, when he says that this enquiry is not a question of *construction* of the will at all; the various objections made by the contestants, when taken in conjunction with the several dispositions called in question, do not present a question of construction. There seems to be no uncertainty in the

language of the will, or in respect to the purposes of the testatrix rendering a construction necessary, and the only question which appears to me to be raised by the heirs-at-law and next-of-kin, is as to the validity of the several dispositions called in question; in other words, whether the so called trusts in the third and twenty-second clause of the will are valid trusts, or the bequests contained in the twentieth clause are valid, or lapse because the legatees are legally incapable of taking.

In Chamberlain v. Chamberlain (43 *N. Y.*, 424), the court passed upon a similar question at the suit of an heir-at-law and next-of-kin against the executors, devisees and legatees claiming under a will, for the judicial construction of the will, and to avoid certain parts and provisions thereof, and for the distribution of the estate, real and personal, among those entitled, and no question was there raised as to the authority of the court to take cognizance of such a case at the suit of the heir-at-law and next-of-kin. If I am right in the conclusion that this is not in fact a proceeding for the construction of the will in question, or any of its provisions, but to determine the validity of the devises contested, it would seem that the case of Chipman v. Montgomery does not apply, and the case is brought directly within the purview of the 11th section of the act of 1870, giving to this court the same power and jurisdiction that the Supreme Court has to pass upon and determine the validity of such devises, which in the case of Chamberlain v. Chamberlain, that court exercised, without its authority being challenged. A precisely similar question

was passed upon by the late surrogate in the case of Fox, (above noticed,) and his authority so to do was not questioned in the several courts on appeal.

I entertain no doubt that the section under discussion confers upon this court all the power and jurisdiction which the Supreme Court may exercise, in hearing and determining the validity of the dispositions in a will, however those questions may arise, and it seems to me that to hold *this* court to be without the authority claimed for it, is to maintain that the Supreme Court is powerless to adjudicate upon the rights of the respective parties to this proceeding, except upon the suit of one party, or set of parties interested, and that they who claim in hostility are powerless and without redress.

It is objected that the statute under consideration makes no provision for bringing in the parties who may be interested in the proposed construction, and that therefore a decree, if made, will not be binding.

It is true that Surrogates' Courts are courts of peculiar and special jurisdiction, and can only exercise the jurisdiction and powers which, by a favorable construction of the statute, is found to have been conferred upon them. (Cleveland *v.* Whiton, 31 *Barb.*, 544; Sibley *v.* Waffle, 16 *N. Y.*, 180; Seaman *v.* Duryea, 11 *N. Y.*, 324; Willcox *v.* Smith, 26 *Barb.*, 316.) If, however, the authority may be reasonably inferred from the general language of the statute, or if it be necessary to accomplish its objects, and to the just and useful exercise of its powers, which are expressly given, it may be taken as granted. (Seaman *v.* Duryea, above cited.)

In the domain of his statutory jurisdiction over the subject matter, he may exercise any powers not inconsistent with existing law, which were inherited by the colonial courts of probate, or the successors of such courts (Skidmore v. Davies, 10 *Paige*, 318; Proctor v. Wanmacher, 1 *Barb. Ch.*, 302; Isham v. Gibbons, 1 *Bradf.*, 69); and he has such incidental powers as are necessary to carry those which are conferred into effect. (Brick's Estate, 15 *Abbott Pr.*, 12).

If I am right in holding that the act of 1870 confers upon the surrogate of this county the power to determine the true construction and legal effect of the several provisions of the will called in question, I entertain no doubt that as a necessary *incident* to its exercise, the authority to bring in all the parties, in order to accomplish the objects of that statute, resides in the surrogate.

The repeal of section one, of the Second Revised Statutes of 1830, page 221, which provided that no surrogate, under pretext of incidental power or constructive authority, should exercise any jurisdiction whatever, not expressly given by some section of the statute, restored to the surrogate such powers as were incidental and necessary to the proper discharge of the functions of the court (Sipperly v. Baucus, 24 *N. Y.*, 46; Brick's Estate, above cited).

By section one, of chapter 359 of Laws of 1870 (p. 820), the surrogate of this county is given power and jurisdiction to issue all lawful process upon allegations duly verified, and by the third subdivision of section six, of 2 *R. S.*, 221, every surrogate is given power to issue citations to parties *in all matters*

*cognizable in h.s court and to compel the appearance of such parties.*

Under this ample power, it seems unnecessary to resort to any *implied* authority to bring the necessary parties in, for the purpose of a complete decree in this matter. But the heirs and next-of-kin are duly cited, and have appeared and invoke the exercise by this court of the jurisdiction claimed for it, and for the purposes of probate the executor represents the several legatees; why does he not for the purpose of construction? Can it be truly said that the authority to reject the *whole will* on contest, presents a less urgent necessity for personal appearance than the construction of certain provisions in the same will?

It is urged by the learned counsel for proponent that the surrogate should not entertain this jurisdiction, because its present exercise would be premature, but that he should wait until the question shall arise on the final settlement and distribution; but it seems to me there is urgent necessity for an early settlement of all questions in dispute on the probate of a will, for the legatees, in anticipation of the final accounting, may apply for the payment of their legacies, or parts of them, and it may be that the executor will neglect or refuse to institute proceedings for the construction of the doubtful provisions, in which case the several legatees would be compelled to wait the final settlement. It appears to me therefore, that an early determination of the validity of the dispositions will best subserve the interests of justice. If, as is claimed, the case of Chipman *v.* Montgomery debars

the heirs-at-law and next-of-kin, as well as legatees, from instituting proceedings to determine such validity, then the neglect of the executor to move would involve this estate in thirty-odd suits at law, for the recovery of that number of legacies. Besides, the probate would seem to be the fittest occasion to pass upon the validity of the dispositions.

I am unable to appreciate the force of the objection that the retention of the jurisdiction will materially impede the administration of the estate, for the questions involved must be of easy and ready solution, and when solved, the will may go to probate, and letters testamentary be issued, and any appeal taken from the determination will not necessarily retard the payment of the legacies which are not questioned, or obstruct the further administration of the estate, any more than would a suit in equity, to procure the construction of the will in question, which might also involve an appeal and suspension of administration.

Indeed, it is suggested whether the will may not be admitted immediately, reserving the question as to the validity of the several dispositions contested, for determination, and restricted letters testamentary issue without delay.

The language of the eleventh section under consideration is: "In any proceeding before the said surrogate to prove the last will and testament of any deceased person," &c. And I am inclined to the opinion that the admission of the will, pending such determination, would not affect the validity of such determination, any more than the admission of a will of personal property, retaining for consideration the

question of its admissibility as a will of real estate, would prevent the further consideration of its admissibility as a will of real estate, or the admission of a will, reserving the question of the admissibility of a codicil thereto, which is of frequent occurrence in practice.

From the best consideration I have been able to give the various questions raised as to the jurisdiction of this court, under the act of 1870, I am of the opinion that I have the authority to determine the validity of the various dispositions contested, and that it is my duty to do so, in obedience to the spirit and purpose of that act.