NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—April, 1886.

CORN *v.* CORN.

*In the matter of the estate of* ABRAHAM CORN, *deceased.*

In order to justify a revocation of letters of administration, or of general guardianship, upon the ground that the same were " obtained by a false suggestion of a material fact" (Code Civ. Pro., § 2685, subd. 4; id., § 2832, subd. 4), it must be made to appear that the suggestion was made to the tribunal by which the letters were granted.

Whether co-administrators can lawfully enter into an agreement, which the court is bound to recognize, whereby one of them is to have the exclusive care and custody of their decedent's estate—*quære.*

PETITION for the revocation of letters of administration, and of guardianship. The facts appear in the opinion.

CARDOZO & NEWCOMBE, *for petitioner.*

A. R. DYETT, *for respondent.*

THE SURROGATE.—This decedent died in November, 1885, leaving his widow, Annie Corn, and his infant child, Percival Corn, him surviving. On January 5th, 1886, letters of administration were granted,

upon the widow's petition, to herself and to Samuel Corn, the father of the decedent. On the same day also, in accordance with Mrs. Corn's petition, Samuel Corn was granted letters of guardianship of the person and estate of her infant son. She now asks the Surrogate to revoke those letters of guardianship, and to revoke also the letters of administration so far as they confer any authority upon this respondent.

Mrs. Corn alleged in her petition that, on or about January 3rd, 1886, the respondent advised her that " under the law it was necessary " that two administrators should be appointed for taking charge of her husband's estate, and two guardians for protecting the interests of her child. She alleges further that the respondent told her that he had made arrangements for the appointment of himself and her as joint administrators and guardians ; that accordingly, at respondent's request, she went to the office of his counsel, Mr. Dyett, and subsequently to the Surrogate's office, and signed certain papers which she supposed to relate to the appointment of the respondent and herself as such guardians and administrators.

It appears by her petition that, on the 5th of January, 1886, Mrs. Corn entered into a certain written agreement with the respondent under a misapprehension, as she claims, respecting its true nature and effect. A copy of that agreement is annexed to the petition. It substantially provides that administrator Corn shall have the sole care and custody of all the property of the estate until the distribution thereof, according to law, and recites that such authority had been yielded to him by the petitioner, because of his

furnishing the sureties upon the administration bond, petitioner herself having been unable to procure the requisite security for her own appointment as sole administratrix. The petitioner insists that these recitals are false; that she was not informed before signing the agreement, and, when she executed it, did not in fact understand, that she was virtually surrendering to the respondent the exclusive possession and control of the property of the estate.

The opposing affidavits of the respondent allege that the agreement in question was drawn in duplicate after consultation between himself and the petitioner, and that the latter read it before execution; that at Mr. Dyett's request she also read the petition for the appointment of herself and the respondent as administrators, and that she took the same course in respect to the petition for appointment of the respondent as guardian of her son. Mr. Corn denies that he ever said to the petitioner that two guardians or two administrators were required by law.

It appears from the affidavit of Mr. Dyett that he prepared for execution the agreement and the two petitions; that he was present when Mrs. Corn signed the three papers; that he explained to her their contents and handed them to her for examination; that she apparently read them through, and afterwards signed them without any protest, and without suggestion that she did not thoroughly understand what she was doing.

The Surrogate's authority to revoke letters of administration is solely derived from section 2685 of the Code of Civil Procedure (O'Brien v. Neubert, 3 *Dem.*,

156). It cannot be claimed that the allegations of the petition in the case at bar would justify revocation under any of the subdivisions of that section except subd. 4. Now, can I find upon the proofs before me that the letters here in question were "obtained by a false suggestion of a material fact?" This expression first came upon the statute book at the adoption of the Code. The law previously in force applicable to this subject (L. 1837, ch. 460, § 34; 3 Banks, 5th ed., 164) provided that letters of administration might be revoked whenever it should appear to the Surrogate that they had been issued "on or by reason of false representations made by the person to whom the same were granted." For that provision the one here invoked was substituted, to cover such cases as were referred to by the Supreme court in Proctor v. Wanmaker (1 *Barb. Ch.*, 302; see Throop's Code, note to § 2685).

In Proctor v. Wanmaker, it was held that, independently of the statute of 1837, the Surrogate had power to revoke letters of administration where there had been a *false suggestion* of a material fact or a lack of notice to the parties rightfully entitled to administration. The cases cited by the Supreme court in support of that proposition were all cases in which letters had been revoked upon a discovery that false representations had been made *to the tribunal by which such letters had been granted,* or that from such tribunal the lack of proper notice had been concealed. See Cornish v. Cornish (1 *Lee Ecc.*, 14); Burgis v. Burgis (*id.,* 121); Drummond v. Hamilton (*id.,* 357);

Smith v. Corry (*id.*, 418); Lord Trimlestown v. Lady Trimlestown (3 *Hagg. Ecc.*, 243).

Now, even upon the petitioner's own showing, I cannot find that the respondent obtained his letters by any false suggestion to the Surrogate of a fact material to the proceeding for the appointment of administrators. The petition must, therefore, be denied. It is not my intention, in so denying it, to pass upon any question as to the validity or effect of the agreement above referred to between the parties to this proceeding. Whether that is such an agreement as administrators may lawfully enter into, and as courts are bound to recognize, may hereafter become the subject of consideration, but need not now be determined.

I had occasion, in deciding Ledwith v. Union Trust Co. (2 *Dem.*, 439), to review the grounds upon which the Surrogate is authorized to remove a guardian appointed, as was this respondent, by virtue of title 7, ch. 18 of the Code of Civil Procedure. I adhere to the conclusion there announced, that, as respects the guardianship of an infant's estate, the Surrogate can not revoke letters, even though such revocation would seem to be for the best interests of the infant, unless facts are established which constitute a sufficient ground for revocation within one or more of the first five subdivisions of § 2832 of that Code. No such facts have been established in the case at bar. I do not discredit Mrs. Corn's allegation that, when she signed the petition asking for the respondent's appointment as guardian, she supposed that she herself would also be granted letters, and accordingly, if such

a course could properly be pursued, I would now direct that she be associated with the respondent in the guardianship. But I have no power to give such a direction. It would be gratifying to the court if the respondent should pursue the course which his counsel, at the argument of this proceeding, declared would meet with his approbation—that is, to resign the guardianship and consent to the grant of new letters to himself and the petitioner. If he shall not see fit to adopt this course, a decree may be entered removing him from his office as guardian of the infant's person; for if the relations between the petitioner and the respondent are to be inharmonious, the infant's welfare will, in my judgment, be promoted by substituting the former for the latter as his personal guardian.