Estate of Corn, deceased.

thereafter the defendant, without apparent provocation, struck Rainor one or two powerful blows upon the head with the butt end of the cue, inflicting wounds fracturing the skull, and causing his death within one hour. Immediately thereafter some one of the assaulting party exclaimed, "Cheese it; a cop!" and they all fled. The defendant remained concealed in New York until the next day, when he left for Maryland, where he resided, passing under an assumed name, until he was arrested on the Saturday following the homicide. Evidence was given on the trial tending to show the previous good character of the defendant, but under the circumstances attending the commission of the homicide and the direct and positive evidence as to the agency of the defendant therein, it properly did not have controlling weight with the jury in determining the verdict. The evidence was submitted to the jury under an unexceptionable charge, and there is no ground in the case for the reversal of the judgment rendered on the verdict.

We think the judgment should be affirmed.

All concur, except MILLER, J., absent.

# SURROGATE'S COURT.

## In the estate of ABRAHAM CORN, deceased.

*Administrators—Guardian— Code of Civil Procedure, sections 2685, 2882— Revocation of letters of administration or of guardianship—What must be made to appear to justify such revocation.*

In order to justify under section 2685 or section 2882 of the Code of Civil Procedure the revocation of letters of administration or letters of guardianship upon the ground that such letters were obtained by a "false suggestion of a material fact," it must appear that such false suggestion was made to the tribunal by which such letters were granted.

ROLLINS, S.—This decedent died in November, 1885, leaving his widow, Annie Corn, and his infant child, Percival Corn,

him surviving. On January 5, 1886, letters of administration were granted, upon the widow's petition, to herself and to Samuel Corn, the father of the decedent. On the same day also, in accordance with Mrs. Corn's petition, Samuel Corn was granted letters of guardianship of the person and estate of her infant son. She now asks the surrogate to revoke those letters of guardianship, and to revoke also the letters of administration so far as they confer any authority upon this respondent.

Mrs. Corn alleged in her petition that on or about January 3, 1886, the respondent advised her that "under the law it was necessary" that two administrators should be appointed for taking charge of her husband's estate and two guardians for protecting the interests of her child. She alleges further that the respondent told her that he had made arrangements for the appointment of himself and her as joint administrators and guardians; that accordingly, at respondent's request, she went to the office of his counsel, Mr. Dyett, and subsequently to the surrogate's office, and signed certain papers which she supposed to relate to the appointment of the respondent and herself as such guardians and administrators.

It appears by her petition that on the 5th of January, 1886, Mrs. Corn entered into a certain written agreement with the respondent under a misapprehension, as she claims, respecting its true nature and effect. A copy of that agreement is annexed to the petition. It substantially provides that administrator Corn shall have the sole care and custody of all the property of the estate until the distribution thereof, according to law, and recites that such authority had been yielded to him by the petitioner, because of his furnishing the sureties upon the administration bond, petitioner herself having been unable to procure the requisite security for her own appointment as sole administratrix. The petitioner insists that these recitals are false; that she was not informed before signing the agreement, and, when she executed it, did not in fact understand that she was virtually surrendering to the respondent the exclusive possession and control of the property of the estate.

Estate of Corn, deceased.

The opposing affidavits of the respondent allege that the agreement in question was drawn in duplicate after consultation between himself and the petitioner, and that the latter read it before execution; that at Mr. Dyett's request she also read the petition for the appointment of herself and the respondent as administrators, and that she took the same course in respect to the petition for appointment of the respondent as guardian of her son. Mr. Corn denies that he ever said to the petitioner that two guardians or two administrators were required by law.

It appears from the affidavit of Mr. Dyett that he prepared for execution the agreement and the two petitions; that he was present when Mrs. Corn signed the three papers; that he explained to her their contents and handed them to her for examination; that she apparently read them through and afterwards signed them without any protest and without suggestion that she did not thoroughly understand what she was doing.

The surrogate's authority to revoke letters of administration is solely derived from section 2685 of the Code of Civil Procedure (*O'Brien* agt. *Neubert*, 3 *Dem.*, 156). It cannot be claimed that the allegations of the petition in the case at bar would justify revocation under any of the subdivisions of that section except subdivision 4. Now can I find upon the proofs before me that the letters here in question were "obtained by a false suggestion of a material fact?" This expression first came upon the statute book at the adoption of the Code. The law previously in force applicable to this subject (*chap.* 460, *sec.* 34, *Laws of* 1837; 3 *Banks* [*5th ed.*], 164) provided that letters of administration might be revoked whenever it should appear to the surrogate that they had been issued "on or by reason of false representations made by the person to whom the same were granted." For that provision the one here invoked was substituted to cover such cases as were referred to by the supreme court in *Proctor* agt. *Wanmaker*, 1 *Barb. Ch.*, 302 (*see Throop's Code, note to sec.* 2685).

In *Proctor* agt. *Wanmaker*, it was held that independently of

the statute of 1837, the surrogate had power to revoke letters
of administration where there had been a *false suggestion* of a
material fact or a lack of notice to the parties rightfully entitled
to administration. The cases cited by the supreme court in
support of that proposition were all cases in which letters had
been revoked upon a discovery that false representations had
been made *to the tribunal by which such letters had been granted*,
or that from such tribunal the lack of proper notice had been
concealed (*see Cornish* agt. *Cornish*, 1 *Lee's Ecc.*, 14; *Burgis* agt.
*Burgis, id.*, 121; *Drummond* agt. *Hamilton, id.*, 357; *Smith* agt.
*Corry, id.*, 418; *Lord Trimlestown* agt. *Lady Trimlestown*, 3
*Hagg. Ecc.*, 243).

Now, even upon the petitioner's own showing, I can not find
that the respondent obtained his letters by any false suggestion
to the surrogate of a fact material to the proceeding for the
appointment of administrators. The petition must, therefore,
be denied. It is not my intention in so denying it to pass upon
any question as to the validity or effect of the agreement above
referred to between the parties to this proceeding. Whether
that is such an agreement as administrators may lawfully enter
into, and as courts are bound to recognize, may hereafter
become the subject of consideration, but need not now be
determined.

I had occasion in deciding *Ledwith* agt. *Union Trust Company*
(2 *Dem.*, 439) to review the grounds upon which the surrogate
is authorized to remove a guardian appointed, as was this re-
spondent, by virtue of title 7, chapter 18 of the Code of Civil
Procedure. I adhere to the conclusion there announced, that
as respects the guardianship of an infant's estate, the surrogate
cannot revoke letters even though such revocation would seem
to be for the best interests of the infant, unless facts are estab-
lished which constitute a sufficient ground for revocation within
one or more of the first five subdivisions of section 2832 of that
Code. No such facts have been established in the case at bar.
I do not discredit Mrs. Corn's allegation that when she signed
the petition asking for the respondent's appointment as guar-

Martin agt. Rector.

dian she supposed that she herself would also be granted letters, and accordingly if such a course could properly be pursued I would now direct that she be associated with the respondent in the guardianship. But I have no power to give such a direction. It would be gratifying to the court if the respondent should pursue the course which his counsel at the argument of this proceeding declared would meet with his approbation — that is, to resign the guardianship and consent to the grant of new letters to himself and the petitioner. If he shall not see fit to adopt this course, a decree may be entered removing him from his office as guardian of the infant's person; for if the relations between the petitioner and the respondent are to be inharmonious the infant's welfare will, in my judgment, be promoted by substituting the former for the latter as his personal guardian.