THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN C. FLINN, Relator, *v.* ROBERT BARR, Warden of City Prison, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY F. LALLEY, Relator, *v.* ROBERT BARR, Warden of City Prison, Respondent.

Supreme Court, New York County, May 29, 1931.

*Nathan Burkan*, for the relator John C. Flinn.

*Coudert Brothers* [*Frederic R. Coudert, Jr.*, of counsel], for the relator Henry F. Lalley.

*Thomas C. T. Crain, District Attorney* [*Felix C. Benvenga, Assistant District Attorney*, of counsel], for the respondent.

FRANKENTHALER, J. This is a petition for a writ of habeas corpus. The relators are held under two indictments, found by the regular March, 1930, grand jury of New York county, for the crime of manslaughter in the second degree, charging them with causing the deaths of Edna Burford and Catherine Porter on December 10, 1929, in a conflagration occasioned by the alleged culpably negligent operation of the Pathé Motion Picture Studio in the building Nos. 1988–1994 Park avenue, in the city and county of New York. Ten lives were lost in the catastrophe. Prior to the submission of the charges to the March grand jury an additional grand jury had dismissed charges against the relators for causing the deaths of Norene Byrne and Ruth Sparks in the said fire. Following such dismissal the district attorney submitted to the March grand jury the charges which resulted in the present indictments, without first obtaining an order of resubmission pursuant to the Code of Criminal Procedure, section 270.

The relators allege in substance that their imprisonment and restraint are void and illegal in that the March grand jury, which found the present indictments, was without jurisdiction to find them; that they were found contrary to the provisions of the Code of Criminal Procedure, section 270, in that the additional grand jury had theretofore dismissed the charges and no order directing their resubmission was obtained; that the dismissal by the first grand jury constituted a final disposition of the charges in the absence of such an order, and that the indictments are, therefore, null and void; and, finally, that a petition for the writ of habeas corpus is the appropriate procedure for the presentation of the questions involved.

A motion was heretofore made by the relators in the Court of General Sessions to dismiss the indictments, which was denied on the ground that an order for resubmission was not necessary, since each grand jury considered separate deaths, although in the same calamity, and hence different charges were presented. The relators cannot at this time appeal from the order denying their motion. This can be done only upon an appeal from a judgment of conviction. (*People ex rel. Jannicky* v. *Warden of City Prison*,

231 App. Div. 131, 136; affd., without opinion, 255 N. Y. 623; *People* v. *Sexton,* 187 id. 495, 511.)

Two questions are presented on the present application: *First,* does the writ of habeas corpus lie? *Second,* have the relators established the identity of the charges submitted to the two grand juries so as to bring themselves within section 270 of the Code of Criminal Procedure?

The propositions of law involved are novel and important. Counsel for both the relators and for the People have submitted briefs exhibiting scholarship and research.

The first issue is whether habeas corpus is the proper remedy. In general all questions respecting the validity of indictments should be remitted to the court in which the indictments have been found. Sound rules of criminal procedure do not, ordinarily, permit relators, by writs of habeas corpus, to interfere with the prescribed procedure furnished by statute for the determination of the validity of indictments. (*People ex rel. Moore* v. *Warden of City Prison,* 150 App. Div. 644; *People ex rel. Childs* v. *Knott,* 187 id. 604, 622, 623, per LAUGHLIN, J.; affd., 228 N. Y. 608; *People ex rel. Burke* v. *McLaughlin,* 77 Misc. 13; affd., 152 App. Div. 912; affd., 207 N. Y. 769.) The principle underlying this line of cases is that the due and proper administration of the criminal law requires in ordinary circumstances that the regular course of customary judicial procedure be adhered to, and that the trial court should be given the opportunity to pass on all the questions presented in the case and not have its functions interfered with or usurped by another tribunal. (*Matter of Hacker,* 73 Fed. 464; *People ex rel. Childs* v. *Knott, supra.*)

It is true that there is an exception to this rule in rare cases " where the facts upon which the writ is sought are unquestioned and where it appears by those facts that a relator is improperly deprived of his liberty." (*People ex rel. Jannicky* v. *Warden of City Prison, supra.*) (See, also, *People ex rel. Bullock* v. *Hayes,* 166 App. Div. 507, 509; *People ex rel. Perkins* v. *Moss,* 187 N. Y. 410, 418, *et seq.*)

If the contentions advanced by the relators were valid it would appear unjust to compel them to go through trials and to wait until judgments of conviction may be entered against them and appeals taken therefrom, for upon every consideration of fairness both to the People and to the accused, such circuity, delay and expense should be avoided if possible in these days of an enlightened and liberal procedural administration of criminal jurisprudence. But in the court's opinion, as indicated in the disposition of the second question, *infra,* the setting, factual and inferential, is not

by any means so complete that " the facts before the court cannot be materially changed, qualified or explained " (*People ex rel. Collins* v. *McLaughlin*, 194 N. Y. 556), or the inferences so obvious as to warrant resort to this summary remedy for the determination of the important issues herein involved. In view of the conclusions hereinafter reached with regard to the identity of the charges submitted to the two grand juries, it, however, becomes unnecessary to determine at the present time whether a writ of habeas corpus may be invoked.

And this brings us to a consideration of the second question, namely, the construction of section 270 of the Code of Criminal Procedure, and by way of corollary, whether relators have established, as they are bound to do, the absolute identity of the charges submitted to the two grand juries. This they have not done, for the charges have not been shown to be identical either in law or in fact. *First*, the charges previously dismissed by the additional grand jury did not relate to the deaths of Edna Burford and Catherine Porter, but to the deaths of different women. *Second*, it by no means appears that all the circumstances and inferences surrounding the demise of these unfortunate victims were the same, or, for that matter, even similar, since only a trial can develop the entire background. This distinguishes the case of *People* v. *Harris & Blanck* (N. Y. L. J. March 22, 1912), relied upon by relators, in which it appeared at the trial that the movements of the victim Klein " were identical with those of " the victim Swartz. Negligence is not a pure question of law, but a mixed and compound question of law and fact. The Code of Criminal Procedure, section 270, provides: " The dismissal of a charge does not, however, prevent its being again submitted to a grand jury, as often as the court may so direct. But without such direction, it cannot be again submitted."

This section changes the common-law rule (31 C. J. 587), and, therefore, must be construed strictly against the relators. It was designed " to provide a convenient check upon the practice which now prevails, of repeated applications to the grand jury for an indictment, where it has been already dismissed." (Draft, Code Crim. Proc. [1850] § 286, note.)

Where the charge dismissed involves a wrongful act against a specified individual, the terminology of the section is too plain for misconstruction. So also where separate and distinct acts are committed against the same or different persons. But where acts or omissions of the same general nature affect more than one individual, the issue is whether it was the legislative intention in enacting this section to prevent resubmission to another grand

jury so far as the act or omission involved affected other individuals in their person or property. While " no question has given rise to more difficulty or conflict than that which presents itself when two or more persons are injured in person or in property by a single act " (*People* v. *Brannon*, 70 Cal. App. 225; 233 Pac. 88, 89), and though " there exists a surprising diversity of opinion in connection with cases where there have been indictments for two or more alleged crimes growing out of the same transaction " (*People* v. *Bevins*, 74 Misc. 377, 379), it seems to me that where the act or omission affects different persons, as many charges properly and logically may be based thereon as there were different persons affected thereby. (Cf. *People* v. *Warren*, 109 N. Y. 615; *People* v. *Rodgers*, 184 App. Div. 462–464; affd., 226 N. Y. 671; *People* v. *Warren*, 1 Park. Cr. 338.) Particularly is this true where the setting of the facts, as in the instant case, may be far from identical even apart from the different personalities of the victims.

A fundamental test under the weight of authority and upon sound reason would seem to be, whether the facts alleged in the indictments would, if given in evidence, have warranted a conviction on the first indictment. (12 Cornell Law Quart. 212, 215 [1927]; 7 Minn. Law Rev. 348 [1923]; 68 Univ. Penn. Law Rev. 70 [1920]; *Morey* v. *Commonwealth*, 108 Mass. 433.) In a word, the vital inquiry is whether the offenses are identical in law and in fact. (Cf. *Burton* v. *United States*, 202 U. S. 344, 380, 381; *People* v. *Rodgers*, *supra*.) It would seem that the previous charges involved the homicide of a specified person, being one distinct crime; the present indictments, of other persons, entirely separate and distinct crimes. (*Commonwealth* v. *Browning*, 146 Ky. 770, 773; 143 S. W. 407; *State* v. *Corbitt*, 117 S. C. 356; 20 A. L. R. 328, and note.) (See, too, 2 Whart. Crim. Proc. [10th ed.] §§ 1399–1403; 2 Van Fleet Former Adjudication, § 622, and cases cited; see, also, the review of the cases in *State* v. *Corbitt*, *supra*.) The whole problem of the identity of offenses is a complex and perplexing one and has been the topic of much discussion in legal literature and periodicals. (13 Columbia Law Rev. 60, 529 [1913]; 20 id. 915 [1920]; 33 Harvard Law Rev. 110 [1920]; 34 id. 785 [1921]; 22 Mich. Law Rev. 142 [1923]; 4 Jour. Crim. Law, 716 [1914].) It has not been established that the accompanying facts here are the same, even apart from the difference in victims. For these reasons it would seem that the identity of the charges submitted to the two grand juries has not been established; that the facts unfolded by the respective charges may be different; that the charges in truth are not identical either in law or fact, and further, that an acquittal on the prior charges would

have constituted no legal bar to a prosecution for the offenses charged in the present indictments. This being so, no order of resubmission was requisite, since leave of court is necessary only in those instances where the bills allege the same charges, while here the charges are not the same within the purview of section 270. The writs of habeas corpus are dismissed and the relators remanded.