THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM FISHER, Relator, against VERNON A. MORHOUS, as Warden of Great Meadow Prison, Respondent.

Supreme Court, Washington County, February 23, 1944.

*William Fisher,* relator in person.

*Nathaniel L. Goldstein, Attorney-General (Herman N. Harcourt* of counsel), for respondent.

IMRIE, J. Relator, here on a writ of habeas corpus, seeks release from custody on the ground that he is deprived of his liberty without due process of law. In October, 1933, he was tried and convicted in the Court of General Sessions of New York on the charge of manslaughter, first degree, for shooting and killing one Feldman. He was sentenced on November 13th of that year to the term which he is now serving.

In October, 1934, by means of a letter to Judge Rosalsky, who presided at his trial, relator moved informally for a new trial on the ground of newly discovered evidence; this motion was denied in 1941 by Judge Streit, of the same court, *nunc pro tunc,* on the grounds that the verdict was amply supported by the evidence; that defendant's substantial rights had not

been prejudiced; that the verdict was not contrary to law or against the weight of evidence; that, while the so-called newly discovered evidence would not have changed the verdict if received during the trial, it was within defendant's knowledge at that time.

The essence of relator's claim of a denial of due process of law is that the People failed to prove the *corpus delicti;* that the prosecutor knowingly made use of perjured testimony; that the trial court erred in the reception of evidence (and, in particular, in receiving in evidence two revolvers and an expended bullet, neither of which, he asserts, was connected with him); that his trial was unfair and prejudicial by reason of the foregoing and by reason of improper references by the prosecutor, in his summation, to the revolvers and the bullet.

The petition herein (which is both petition and brief) contains extensive extracts from the record of the trial and from the court's charge. In addition, the relator has submitted an apparently complete transcript of the minutes of the trial including all proceedings when he was sentenced; also, additional and duplicating transcripts of portions of the testimony and the court's charge, as well as a portion of the record, on his motion for a new trial and the determination made thereon by Judge STREIT. We may consider the return of the respondent as a demurrer and by reason thereof assume the correctness of relator's allegations. Even so, the voluminous papers and records submitted by him appear to me to be sufficient to permit me to reach a determination on his claim of denial of due process.

At the trial relator was represented by able counsel. Some days after the verdict, the latter made a formal motion for a new trial; in this motion he set up no claim of prejudice to or denial of the constitutional rights of his client. Eleven days later, when Fisher was arraigned for sentence, and in the latter's presence, his counsel, stating that he had had no idea that the defendant had written a letter to the court, continued, " but I did see him (Fisher) in the Tombs Friday last and he wished me to convey to your Honor his thanks and gratitude for the fair manner and the impartial way in which he was tried."

No appeal was taken, although all of the matters now set forth by the relator in his claim of denial of due process could have been disposed of on appeal, in proper and orderly manner, with the exception that the relator might contend that he did not have knowledge of the alleged Bolger perjury until after

the time for appeal had expired. Detective Bolger, of the Ballistics Bureau, testified for the People as to certain of his acts and findings at the scene of the homicide shortly after its happening. Previously, Dr. Helpern, the Assistant Medical Examiner, as a witness for the People, had identified a spent bullet which he had taken from the overcoat of the deceased Feldman, and which was the bullet above stated as having been received in evidence. Upon cross-examination by defense counsel and in answer to the question as to whether he had ever seen this bullet exhibit before, Bolger swore that he had not. Relator produced a letter written to him by Dr. Helpern under date of March 15, 1935, substantially more than a year after the trial, in which Dr. Helpern states that the bullet in question was given by him to Detective Arthur Lloyd, of the Ballistics Bureau, on January 13, 1933, and was returned to him by Detective Bolger on October 24, 1933 (on which date Dr. Helpern testified). This letter appears to be the basis for relator's contention that Bolger swore falsely; the prosecutor's knowledge of this false swearing seems to depend, in relator's mind, upon the fact that all the records of these offices were in the possession and within the knowledge of the prosecutor and that, in substance, with this knowledge before him, he must have known that Bolger did, in fact, deliver the bullet to Dr. Helpern at the time of the trial; that Bolger must have seen it, and that his statement that he did not see it was, therefore, perjury with the knowledge of the prosecutor. In the first place, the prosecutor did not bring out that testimony. Further, the matters adduced by the relator do not establish that the statement by Bolger was perjury. He was not the only one in the Ballistics Department. It was quite conceivable that he could have delivered it to Dr. Helpern without knowing what it was. Nor was it material. If anything, Bolger's statement might well have been advantageous to Fisher, the defendant, as one item of failure of proof to connect such bullet with Fisher or his revolver. Certainly, there was nothing inherently improbable in Bolger's denial of having seen the bullet, nor any satisfactory proof that he was then guilty of perjury. So far as that claim of perjury is concerned, it seems utterly trivial, even when added to any possible prejudice to the relator growing out of the failure to positively connect him with either of the revolvers received in evidence, and with statements by the prosecutor in his summation with reference to such revolvers. In fact, such statements, as quoted by relator, include the declaration that the State had not connected either revolver with the defendant.

The record before me shows no objection to any part of the prosecutor's summation; likewise, that no exceptions were taken to any of the court's specific instructions; that defense counsel's requests to charge included none of these matters other than a request to charge the jury that there was no evidence that the bullet found in the body of the deceased Feldman came or was discharged from the guns then in evidence as People's Exhibits Nos. 2 and 3.

Of course, it is true, as was clearly stated to the jury by the trial court, that the presumption of innocence of the then defendant persisted; likewise, that he was entitled to a fair trial and that his substantial rights should have been and must be protected. However, in view of the testimony which was before the jury, and the weight apparently given to it, it would not seem that there was sufficiently substantial error committed, whether it be on the ground of the erroneous receipt of testimony, the alleged perjury or the possible prejudice with reference to the revolvers and the bullet, to justify the conclusion that the verdict of the jury was thereby influenced. There are further vague and indefinite references by relator, in his petition and brief, to perjured testimony in general but he fails to specify or to elaborate. On the allegation of denial of due process of law, alone, it should be held that relator has failed to establish his claim.

While the foregoing determination would unquestionably suffice for a dismissal of the writ, it fails to dispose of the issue inherent in this and similar proceedings which have been and undoubtedly will be before this court. At the risk of appearing unduly discursive, I venture further comment on that subject and amplification of my position taken in *People ex rel. Smith* v. *Morhous* (181 Misc. 745).

In this jurisdiction all authoritative interpretation of the function of habeas corpus confines the inquiry on the return of the writ to the legal sufficiency of process, the question of the jurisdiction of the person and of the crime charged in the court rendering judgment and the power of that court to make the judgment so rendered. (*People ex rel. Bailey* v. *McCann,* 222 App. Div. 465; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559; *People ex rel. Hubert* v. *Kaiser,* 206 N. Y. 46; *People ex rel. Carr* v. *Martin,* 286 N. Y. 27.)

While constitutional mandate perpetuates in our State jurisprudence the common-law writ of habeas corpus, it does not follow that we have both a common-law and statutory writ. The statute controls in all respects in procedural and jurisdic-

tional matters pertaining to the writ except insofar as the statute may be shown to abrogate or to detract from the protective force of the common-law proceeding. (*People ex rel. Tweed* v. *Liscomb, supra.*)

The review sought by petitioner is within the clear inhibition of sections 1231 and 1252 of the Civil Practice Act. He " has been committed " and " is detained by virtue of the final judgment \* \* \* of a competent tribunal of \* \* \* criminal jurisdiction ". Are these sections restrictive of the common law, in that, under like circumstances, the common-law writ would have permitted a review of the evidence to determine whether he is rightfully detained? I know of no authoritative ruling to that effect. On the other hand, in a footnote study appearing somewhat over a century ago (3 Hill 647), Nicholas Hill makes an interesting comparison between the various sections of the habeas corpus statute then in effect with the corresponding common-law provisions. He indicates no conflict between the common law and the then predecessor sections to 1231 and 1252. In another footnote (1 Hill 396) there is a further discussion on the question of whether, on application for bail, the court might take into consideration the facts and enter " into the probability of the person's not being guilty." The editor there cites the case of *Rex* v. *Parnam* (1 Cunn. 96 [1734]), in which the defendant, charged with knowingly receiving a stolen silver spoon, came before the court for the purpose of fixing bail. A precedent was urged in support of his application. Lord Hardwicke, Ch. J., is quoted as distinguishing the supposed precedent by pointing out that there the defendant had been admitted to bail, not on the merits of the commitment, but by reason of the mistake of the person accused, and as saying: " but here you apply to have the defendant discharged (presumably on bail) on the very merits: but I think it would be of the most dangerous consequence, if we should allow of such proceedings; for then, all the prisoners in *England* would lay their cases before us, and we, instead of the jury, must try the truth of the fact for which they are committed." (Italics in original.) We may well feel critical of the spirit of that pronouncement but it is significant, it seems, as indicating the common-law viewpoint of the limitation of the court's prerogative of review of facts under the writ. From the foregoing it may well appear that if the present statute varies from the common law, at least in respect to the province of the writ in intermediate proceedings, such as matters affecting bail, and in proceedings where relief by appeal

would be delayed or would unnecessarily harass and burden the individual, such variance is in the direction of liberalism and amelioration. (Cf. *People ex rel. Flinn* v. *Barr*, 140 Misc. 422, affd. 234 App. Div. 682, revd. 259 N. Y. 104; *People ex rel. Jannicky* v. *Warden of City Prison*, 231 App. Div. 131, affd. 255 N. Y. 623; *People ex rel. Bullock* v. *Hayes*, 166 App. Div. 507; *People ex rel. Perkins* v. *Moss*, 187 N. Y. 410.) Yet, parenthetically, these and certain kindred cases carry within themselves confirmation of the basic soundness of the position already expressed as to the limitation of the function of the writ; in such cases there is, in substance, the recurring statement that the case then under consideration was one of those '' rare and exceptional cases '' where the facts are conceded or are readily apparent, and cannot be changed, qualified or explained, and that by these facts it appeared that the relator was improperly deprived of his liberty.

But, when we turn from procedural matters, as considered in such cases, to the question of the effect of sections 1231 and 1252, we meet the unqualified statement that '' In no case has a writ of habeas corpus been sustained by this court where imprisonment is under a final judgment of imprisonment by a court having jurisdiction of the person of the accused and general jurisdiction of criminal offenses.'' (*People ex rel. Carr* v. *Martin,* 286 N. Y. 27, 36, *supra.*)

The ruling of the United States Supreme Court in *N. Y. ex rel. Whitman* v. *Wilson* (318 U. S. 688) in no wise detracts from the foregoing quotation or alters the rule for this jurisdiction as set forth in the *Carr* and the *Hubert* cases (*supra*). Apparently, these two cases were not brought to the attention of the Supreme Court on the argument before it on the *Whitman* case (*supra*), else it would seem that the views of the minority as there expressed by Mr. Justice FRANKFURTER might have prevailed.

In this proceeding the relator has submitted, as a part of his argument, an unpublished opinion in a new phase of the *Whitman* case recently handed down by my learned colleague, Mr. Justice BREWSTER. Apparently, the relator has interpreted comments by the court in that opinion to indicate the holding that a court might lose its competency by reason of improper and incorrect rulings upon the trial. Such an inference is clearly negatived in *People ex rel. Carr* v. *Martin,* (*supra,* pp. 31, 33): '' A final order or judgment of a court of competent jurisdiction, though erroneous, is not void if the court had jurisdiction of the person of the accused and jurisdiction to try the charge against him. * * * That question is one of

law and erroneous decision might result in the conviction of the defendant for a crime he did not commit. Erroneous or not it can hardly be doubted that the court had jurisdiction to decide that question and a judgment based upon an erroneous decision on a question of law made by a court competent to decide such question is not void.''

Relator raises no question as to the sufficiency of his indictment (as to which, it appears from his petition, an associate in this court has already denied him relief), nor to his arraignment or other pre-trial proceedings, nor as to the quantitative correctness of his sentence. Thus, it appears that he attacks only the competency of the court to hear and decide and, inferentially, raises the question as to whether there may be a '' shifting '' of competency by reason of errors committed by erroneous rulings on the trial.

A '' competent '' court, either civil or criminal, is one having lawful jurisdiction. (*Landers et al.* v. *Staten Island R. R. Co.,* 53 N. Y. 450; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559, *supra.*) '' Jurisdiction '' is the power to consider and decide one way or the other, as the law may require. (*Bennett* v. *Cole,* 173 App. Div. 521; *People* v. *Troupe, Nos. 1 & 2,* 171 App. Div. 1; *People ex rel. Bailey* v. *McCann,* 222 App. Div. 485, *supra.*) Thus, '' competency '' in a court, within the meaning of the statute, is measured by its '' power '' and not by its errors in the exercise of the power nor, even, by the personal attributes or traits of him who may preside over the court. True, a court, entirely competent to conduct a trial, may thereafter seek to impose a sentence beyond its power; then it is no longer competent. (*People ex rel. Tweed* v. *Liscomb, supra.*) Or, a complete failure of legal process may operate to prevent jurisdiction vesting in a court which would otherwise be fully competent to proceed with the trial. But within the area where the court has the power to consider and decide, as the law may require, it seems that its competency must remain constant. Errors of law or of judgment on the part of the presiding judge will not affect the competency of the tribunal, nor will one, otherwise '' competent '', become less so by making an erroneous decision on the question of law. (*People ex rel. Carr* v. *Martin, supra; Landers et al.* v. *Staten Island R. R. Co., supra.*)

There is no question about the competency of the court in which relator was tried; thus, the provisions of section 1252 of the Civil Practice Act require that he be remanded.

That the courts of this jurisdiction have insisted that there be '' rigid observance of the limitations upon the use of the writ of habeas corpus 'arising from the nature and objects of the

writ itself as defined by the common law ' " (*People ex rel. Carr* v. *Martin, supra*), betokens no lack of agreement on their part with the necessity for a zealous regard for the rights of the individual to the full protection of the laws and due process thereunder, or that the writ of habeas corpus " is the precious safeguard of personal liberty and (that) there is no higher duty than to maintain it unimpaired " (*Bowen* v. *Johnston,* 306 U. S. 19, 26). Rather, that insistence indicates their clear understanding that the cause of human liberty is not enhanced by the straining of established legal procedures; that " In the scheme of things, order requires that under the great majority of cases certain regular procedure be followed, to the end that the instruments provided accomplish the greatest good for the greatest number " (*Walker* v. *Chitty,* 112 F. 2d 79); that the ultimate efficacy of the writ is best served if it is confined within its proper province and therein so administered as to avoid its eventual nullification by a gradual whittling away of its requirements.

The fact that it is determined that habeas corpus is not applicable in such cases as this does not leave without redress, after his time to appeal may have passed, one who is circumstanced as this relator claims to be. The same common law which gave us the writ of habeas corpus, evolved also the writ of *coram nobis.* If, as petitioner contends, the prosecutor, representing the State, knowingly used perjured testimony to secure his conviction, thus perpetrating a fraud upon the court as well as the defendant, such matter (which is dehors the record) clearly justifies the exercise by the court of original jurisdiction of its inherent power to open its own judgment for the purpose of making suitable inquiry. (*Matter of Lyons* v. *Goldstein,* 290 N. Y. 19.) In the minority opinion in *N. Y. ex rel. Whitman* v. *Wilson* (318 U. S. 688, 691, *supra*), Mr. Justice Frankfurter remarks: " Unless I misapprehend the controlling decisions of the New York Court of Appeals and the authoritative commentary thereon by the Chief Judge of that Court, * * * New York recognizes the right which petitioner seeks to vindicate here by providing a procedure for asserting it different from that which the petitioner has pursued. * * * That writ (habeas corpus) in New York merely tests the legality of a detention according to the face of the record. * * * New York recognizes the constitutional duty to provide a remedy for such a claim as arises under the doctrine of *Mooney* v. *Holohan, supra.* [294 U. S. 103.] But New York's remedy for testing such a claim is not by habeas corpus but by appropriate motion before the court in which the sentence of conviction was rendered. [Citing *Matter of Lyons* v. *Goldstein, supra.*] "

In my view, the relator here, by writ of habeas corpus, does not pursue the proper procedure.

Upon the grounds stated, the writ should be dismissed and relator remanded to the custody of the Warden. Submit order accordingly.